FLINT COLD STORAGE v DEPARTMENT OF TREASURY

Docket No. 286921. Submitted September 1, 2009, at Lansing. Decided September 8, 2009, at 9:05 a.m.

Flint Cold Storage, a closely held Michigan corporation that was dissolved in October 1975, and whose final annual report, dated July 15, 1975, indicates that Vincent Meli was the president, his wife, Pauline Meli, was the secretary, and their son, Angelo Meli, was the vice president, brought an action in 2007 in the Ingham Circuit Court against the Department of Treasury, alleging that it was the rightful owner of unclaimed funds held by the defendant's unclaimed property division. The funds had been sent to the defendant in 2003 by Metropolitan Life Insurance Company when it was unable to locate the plaintiff during its process of distributing demutualization funds to its policyholders. The plaintiff had purchased a life insurance policy on the life of Vincent Meli sometime before its dissolution. Vincent died in 2003, survived by his wife and son. Upon learning of the unclaimed funds, Pauline attempted to claim the funds in her capacity as an officer of the dissolved corporation. The defendant denied the claim, stating that the funds belonged to the shareholders of the dissolved corporation at the time of dissolution and that the shareholders had not been identified. The court, Laura L. Baird, J., granted summary disposition for the defendant, ruling that the plaintiff lacked the capacity to sue because it was no longer winding up its affairs. The plaintiff appealed.

The Court of Appeals held:

1. MCL 450.1833 and MCL 450.1834 provide that a dissolved Michigan corporation may continue to exist beyond the date of dissolution only until it has concluded winding up its affairs.

2. Chapter 8 of the Business Corporation Act, MCL 450.1801 et seq., governs the dissolution and winding up of Michigan corporations. The act does not provide an express time limitation for the winding up of corporate affairs. Therefore, a corporation must finish liquidating its business and complete the winding up process within a reasonable time. What constitutes a reasonable time is generally a question of law for the court. A 32-year winding up period, as was argued in this case, is not reasonable.

3. Once a dissolved corporation has finished winding up its affairs, its existence is terminated and it ceases to exist for all purposes. Once the existence of a dissolved corporation has terminated, it loses the powers enumerated in MCL 450.1833 and MCL 450.1834, including the power to sue and be sued. The plaintiff lacked the capacity to sue and be sued under the Business Corporation Act once its corporate existence terminated.

4. Only an existing legal or commercial entity may bring suit to recover unclaimed property under MCL 567.247 of the Uniform Unclaimed Property Act. The trial court properly determined that the plaintiff lacked the capacity to sue.

Affirmed.

1. CORPORATIONS — BUSINESS CORPORATION ACT — DISSOLUTION — WINDING UP.

The provisions of the Business Corporation Act governing the dissolution and winding up of Michigan corporations do not provide an express time limitation for the winding up of corporate affairs; therefore, the winding up process must be completed within a reasonable time (MCL 450.1801 *et seq.*).

2. CORPORATIONS — DISSOLUTION — WINDING UP.

Once a dissolved corporation has finished winding up its affairs, its existence is terminated and it ceases to exist for all purposes and may not thereafter exercise the powers to sue and be sued enumerated in the Business Corporation Act (MCL 450.1833 and 450.1834).

3. ACTIONS — UNIFORM UNCLAIMED PROPERTY ACT — SUITS TO RECOVER UNCLAIMED PROPERTY.

Only an existing legal or commercial entity may bring suit to recover unclaimed property under the Uniform Unclaimed Property Act (MCL 567.222[m] and 567.247).

*Law Offices of Ezra N. Goldman, P.C.* (by *Ezra N. Goldman*), for the plaintiff.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Heidi L. Johnson-Mehney*, Assistant Attorney General, for the defendant.

Before: JANSEN, P.J., and FORT HOOD and GLEICHER, JJ.

JANSEN, P.J. In this action brought under MCL 567.247 to recover unclaimed property, plaintiff Flint Cold Storage appeals by right the circuit court's grant of summary disposition in favor of defendant Department of Treasury.[1] We affirm.

I

Flint Cold Storage was a closely held Michigan corporation, established for the purpose of providing refrigerated cold storage for perishable products. It was incorporated in 1946 or 1947, and dissolved in October 1975. Plaintiff's final annual report, dated July 15, 1975, indicates that Vincent Meli was the president, that his wife Pauline Meli was the secretary, and that their son Angelo Meli was the vice president.[2] At some point before its dissolution, Flint Cold Storage purchased a life insurance policy on the life of Vincent Meli from Metropolitan Life Insurance Company (MetLife).

MetLife demutualized in 2000[3] and began distributing demutualization funds to its policyholders. MetLife

---

[1] Throughout the lower court proceedings in this case, the only named defendant was Gonzalo Llano, the director of the Department of Treasury's Unclaimed Property Division. However, MCL 567.247 specifically directs that a plaintiff who brings an action in circuit court to recover unclaimed property must "nam[e] the administrator as a defendant." For the purposes of Michigan's Uniform Unclaimed Property Act (UUPA), MCL 567.221 *et seq.*, " '[a]dministrator' means the state treasurer." MCL 567.222(a). Accordingly, the proper defendant in this action is the Department of Treasury, and not the director of the Unclaimed Property Division. See MCR 7.216(A)(2).

[2] The 1975 annual report actually lists "Angela Meli" as vice president. However, this appears to have been a typographical error. Documents contained in the lower court file tend to establish that there was never any member of the Meli family with the name "Angela." Moreover, other independent evidence indicates that Angelo Meli was the vice president.

[3] "Demutualization" is the process of converting from a mutual insurance company, which is owned by policyholders, to a stock insurance

was unable to locate Flint Cold Storage, presumably because the corporation had been dissolved years earlier and no longer conducted business. Therefore, in 2003, MetLife sent $188,679.99 in demutualization funds, payable to Flint Cold Storage, to defendant's Unclaimed Property Division.[4]

Vincent Meli died in 2003, survived by his wife and son. Upon learning of the existence of the unclaimed $188,679.99, Pauline Meli attempted to claim the property in her capacity as an officer of the dissolved corporation. The Unclaimed Property Division requested documentation to prove that she was entitled to collect the unclaimed funds. Pauline Meli responded to the request by providing a copy of Flint Cold Storage's 1975 annual report, proof that she was the widow of Vincent Meli, and proof that she, her son, and her late husband were the sole officers of Flint Cold Storage at the time of its dissolution in 1975. She presented no proof of the identity of the historic shareholders of Flint Cold Storage. Nor did she provide any bylaws, board meeting minutes, stock certificates, tax returns, or other annual reports of Flint Cold Storage. As was later discovered, the Michigan Department of Labor & Economic Growth[5] had either inadvertently destroyed

company, which is owned by shareholders. Black's Law Dictionary (7th ed); see also *Bank of New York v Janowick*, 470 F3d 264, 267 (CA 6, 2006). For the purposes of the UUPA, " 'demutualization' means the payment of consideration for the relinquishment of a mutual membership interest in a mutual insurance company, regardless if undertaken in conjunction with a plan of demutualization, liquidation, merger, or other form of reorganization." MCL 567.228b(3).

   [4] MCL 567.228b(1)(a) provides that funds distributable in the course of the demutualization of an insurance company are "presumed abandoned" after two years from the date of the demutualization "if the funds remain unclaimed and the owner has not otherwise communicated with the holder [of the funds] or its agent regarding the property . . . ."

   [5] The former Department of Labor & Economic Growth is now the Department of Energy, Labor & Economic Growth.

its records concerning Flint Cold Storage or had destroyed them in the ordinary course of business. At any rate, it is beyond dispute that the department no longer retained any documents pertaining to the dissolved corporation. Electronic correspondence contained in the lower court file shows that Pauline Meli's son, Angelo Meli, attempted to obtain copies of plaintiff's tax returns from the Internal Revenue Service. However, he was apparently unsuccessful.

On May 7, 2007, defendant denied the claim. On June 15, 2007, plaintiff commenced this action in the Ingham Circuit Court pursuant to MCL 567.247. Plaintiff alleged that it was the rightful owner of the $188,679.99 in unclaimed funds and contended that it had done everything in its power to prove this to defendant. Plaintiff pointed out that there was no other claimant of the funds, and asserted that defendant had "no basis for withholding . . . payment" of the funds.

Defendant admitted that the Unclaimed Property Division was "holding property in the amount of $188,679.99 under the name Flint Cold Storage." Defendant also acknowledged that Pauline Meli "was an officer of Flint Cold Storage for at least the year 1975." However, defendant asserted that because plaintiff had only produced an annual report from 1975, it could not be certain of the identity of the corporation's officers for any other year. Similarly, defendant asserted that it could not be certain of the identity of Flint Cold Storage's historic shareholders because plaintiff had produced no stock certificates or other documentation.

Defendant contended that Flint Cold Storage no longer existed as a legal entity and that the rightful owners of the unclaimed funds were therefore the historic shareholders of the dissolved corporation at the time of dissolution. However, defendant asserted that it

did "not know who the shareholders were at the time of dissolution, as [defendant] has not been provided with this information by any representative of the plaintiff, or any other person." Because the historic shareholders had not been identified, defendant maintained that it was unable to release the $188,679.99.

Plaintiff moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that it was beyond genuine factual dispute that Flint Cold Storage was the rightful owner of the unclaimed funds. Plaintiff argued that although it had dissolved in 1975, it had the authority under MCL 450.1833 "to continue doing business after dissolution for the purpose of collecting its assets." Plaintiff also argued that, though dissolved, it still had the power to sue and to hold assets under the provisions of MCL 450.1834. In addition to the 1975 annual report of Flint Cold Storage, plaintiff submitted a warranty deed, dated March 3, 1975, by which Flint Cold Storage sold and conveyed its real property at 925 South Dort Highway, Flint,[6] for the amount of $180,000. The warranty deed was signed by Vincent Meli, as president of Flint Cold Storage, and Pauline Meli, as secretary of Flint Cold Storage. Plaintiff argued that the 1975 annual report proved that Vincent Meli, Pauline Meli, and Angelo Meli were the only officers of Flint Cold Storage at the time of its dissolution in 1975. Plaintiff further argued that the warranty deed proved that Vincent Meli and Pauline Meli had been authorized to act on behalf of the corporation before its dissolution.

Defendant responded to plaintiff's motion for summary disposition by arguing that Flint Cold Storage no longer existed as a legal entity and that the rightful

---

[6] This is the same street address listed for Flint Cold Storage on the report of the Unclaimed Property Division that describes the $188,679.99 in unclaimed funds.

owners of the unclaimed funds were therefore the historic shareholders of Flint Cold Storage at the time of dissolution. Because the identity of these historic shareholders had not been proven, defendant argued that plaintiff's motion for summary disposition should be denied. In the meantime, defendant had served plaintiff with several interrogatories and requests to admit. In its response of February 14, 2008, plaintiff admitted, among other things, that it could not "produce any Flint Cold Storage stock certificates" and that it could not "produce any documents indicating the names of the individuals who were shareholders and/or their percentage ownership at the time of dissolution of the corporation."

Defendant then filed its own motion for summary disposition pursuant to MCR 2.116(C)(5) and (10). Defendant argued that Flint Cold Storage lacked the capacity to sue because it no longer existed. Defendant asserted that Flint Cold Storage could not possibly be still winding up its affairs more than 32 years after dissolution, and that the dissolved corporation had therefore ceased to exist as a legal entity. Accordingly, defendant argued that Flint Cold Storage no longer possessed the power to sue and be sued, and that summary disposition should be granted in its favor under MCR 2.116(C)(5).

Defendant also argued that even if Flint Cold Storage had not altogether ceased to exist as a legal entity, summary disposition should be granted pursuant to MCR 2.116(C)(10) because it was beyond factual dispute that the dissolved corporation, itself, was not the rightful owner of the $188,679.99 in unclaimed funds. Specifically, defendant contended that even if Flint Cold Storage was still arguably winding up its affairs after more than 32 years, the rightful owner of

the unclaimed funds was no longer the dissolved corporation. Defendant argued that, more than 32 years having passed since the 1975 dissolution, the unclaimed funds now rightfully belonged to Flint Cold Storage's individual historic shareholders—*not* to the dissolved corporation itself. Defendant pointed out that plaintiff had admitted that it could not "produce any documents indicating the names of the individuals who were shareholders and/or their percentage ownership at the time of dissolution of the corporation."

Plaintiff responded to defendant's motion by arguing that it retained the capacity to sue and be sued and was the proper party to pursue this action. Relying on MCL 450.1833 and 450.1834, plaintiff asserted that it still existed as a legal entity and was authorized to continue its existence for as long as was necessary to wind up its affairs. Plaintiff argued that, as part of the winding up process, it was entitled to collect its assets, such as the $188,679.99 in unclaimed funds. In addition, plaintiff submitted the affidavit of Pauline Meli, dated April 29, 2008, in which she averred that "[t]he last shareholders of Flint Cold Storage were myself, my late husband Vincent Meli, and my late mother in law, Jenny Meli."

After hearing oral argument, the circuit court granted summary disposition in favor of defendant, presumably pursuant to MCR 2.116(C)(5), ruling:

> It seems like the equities are with the plaintiff, and I don't find the law particularly illuminating.
>
> But what I—I am going to rule in favor the defendant and against the plaintiff. I'm going to give you my reasoning. I am going to read it into the record so you've got it, in case you need it for further action.

* * *

First, I'm going to address the (C)(10) claim. A motion under this subrule tests whether there's a question of material fact for trial. . . .

In my mind the main issue in this case centers on interpreting the Business Corporation Act. MCL . . . 450.1833 states a dissolved corporation shall continue its corporate existence but shall not carry on business except for the purpose of winding up its affairs. MCL 450.1834 states, subject to section 833, and except as otherwise provided by court order, a dissolved corporation, its officers, directors and shareholders shall continue to function in the same manner as if dissolution had not occurred.

[MCL 450.1834(e)] states that the corporation may sue and be sued in its corporate name and process may issue by and against the corporation in the same manner as if dissolution had not occurred.

The . . . Michigan Court of Appeals in [*Gilliam v Hi-Temp Products, Inc*, 260 Mich App 98; 677 NW2d 856 (2003)], states that at common law a dissolved corporation is a dead person . . . . The Court also reasoned that the legislature has provided for the orderly winding up of corporate affairs.

Although it's feasible that the money truly does belong to the plaintiff, it can't be said that after 33 years the plaintiff is still winding up its business. While the plaintiff only had a cause of action since 2003, 2004 or 2005, when the money was deposited doesn't seem to be exactly relevant to my decision . . . . The corporation was still dissolved in 1975.

The Court must follow the plain language of the statute and the intent of the legislature. This corporation has not conducted business in 33 years or filed annual reports. It was dissolved 33 years ago. Therefore, by my reading of MCL 450.1833 it cannot be said that the corporation is still winding up its affairs. And, as a result, the corporation can't file suit under [MCL 450.1834]. Therefore, plaintiff's motion is denied and the defendant's is granted.

II

We review de novo the circuit court's decision to grant or deny a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998); *Rohde v Ann Arbor Pub Schools*, 265 Mich App 702, 705; 698 NW2d 402 (2005). Summary disposition is properly granted pursuant to MCR 2.116(C)(5) if "[t]he party asserting the claim lacks the legal capacity to sue." "In reviewing a grant of a motion for summary disposition pursuant to MCR 2.116(C)(5), we must consider the pleadings, depositions, admissions, affidavits, and other documentary evidence submitted by the parties." *Rohde*, 265 Mich App at 705. We also review de novo questions of statutory interpretation, *Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008), and all other questions of law, *Cowles v Bank West*, 476 Mich 1, 13; 719 NW2d 94 (2006).

III

The Uniform Unclaimed Property Act (UUPA), MCL 567.221 *et seq.*, provides a mechanism by which the state may hold certain unclaimed property in trust for the benefit of the rightful owner. The UUPA applies to both tangible and intangible property that is in the possession of a "holder." See MCL 567.222(n); MCL 567.223(1). A "holder" is "a person, wherever organized or domiciled," who is "[i]n possession of property belonging to another," "[a] trustee," or "[i]ndebted to another on an obligation." MCL 567.222(h)(*i*), (*ii*), and (*iii*). In general, "all property, including any income or increment derived from the property, less any lawful charges, that is held, issued, or owing in the ordinary course of a holder's business and remains unclaimed by the owner for more than 5 years after it becomes payable or distributable is presumed abandoned." MCL

567.223(1). However, certain types of property are subject to specific presumptions of abandonment that provide for longer or shorter periods. See MCL 567.225 through 567.237. Of particular relevance here, funds that are "distributable in the course of the demutualization of an insurance company" are presumed abandoned "2 years after the date of the demutualization, if the funds remain unclaimed and the owner has not otherwise communicated with the holder [of the funds] or its agent regarding the property as evidenced by a memorandum or other record on file with the holder or its agent." MCL 567.228b(1)(a). Once property is presumed abandoned under one of these provisions, it "is subject to the custody of this state as unclaimed property" if one or more of the several conditions listed in MCL 567.224 has been met. Property that is both presumed abandoned and subject to the custody of the state under MCL 567.224 must generally be paid or delivered to the state treasurer. See MCL 567.240(1).

The UUPA goes on to provide that "[a] person, excluding another state, claiming an interest in any property paid or delivered to the [state treasurer] under this act, may file with the [state treasurer] a claim on a form prescribed by the [state treasurer] and verified by the claimant." MCL 567.245(1). The state treasurer must then consider the claim "within 90 days after it is filed and give written notice to the claimant if the claim is denied in whole or in part." MCL 567.245(2). "If a claim is allowed, the [state treasurer] shall pay over or deliver to the claimant the property or the amount the [state treasurer] actually received or the net proceeds if it has been sold by the [state treasurer], plus any additional amount required by [MCL 567.242]." MCL 567.245(3).

The UUPA also creates a cause of action for claimants whose claims are denied or not timely processed, permitting such persons to bring suit in circuit court. Specifically, the UUPA provides that "[a] person who is aggrieved by a decision of the [state treasurer] or whose claim has not been acted upon within 90 days after its filing may bring an action to establish the claim in the circuit court, naming the [state treasurer] as a defendant." MCL 567.247. Such an action must be commenced "within 90 days after the decision of the [state treasurer] or within 180 days after the filing of the claim if the [state treasurer] has failed to act on it." *Id.* The UUPA provides that "[i]f the aggrieved person establishes the claim in an action against the [state treasurer], the court shall award the claimant costs and reasonable attorney's fees." *Id.*[7]

IV

Relying on MCL 450.1833 and 450.1834, plaintiff argues that it continued to exist as a legal entity beyond the date of its 1975 dissolution and therefore retained the capacity to commence this action in circuit court pursuant to MCL 567.247. We cannot agree.

Statutory interpretation requires that we "give effect to the intent of the Legislature as expressed by the plain meaning of the statute." *Grand Traverse Co v Michigan*, 450 Mich 457, 463; 538 NW2d 1 (1995). We must begin by examining the statutory language itself.

---

[7] The state treasurer is authorized to "promulgate rules necessary to carry out the provisions of [the UUPA] under the administrative procedures act," MCL 567.260, but has not done so. Indeed, defendant admitted during discovery in this case that "[t]he Department of Treasury has not promulgated any administrative rules that affect the Unclaimed Property Division." However, defendant also admitted that the Unclaimed Property Division "has written internal operating policies," including a policy "for dealing with claims by dissolved businesses."

*DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605
NW2d 300 (2000). "Where that language is unambigu-
ous, we presume that the Legislature intended the
meaning clearly expressed—no further judicial con-
struction is required or permitted, and the statute must
be enforced as written." *Id*. Statutes are considered *in
pari materia* if they relate to the same subject matter or
share a common purpose. *Palmer v State Land Office
Bd*, 304 Mich 628, 636; 8 NW2d 664 (1943). Statutes
that are *in pari materia* "must be read together as
constituting one law, even if they contain no reference
to one another and were enacted on different dates."
*Crawford Co v Secretary of State*, 160 Mich App 88, 95;
408 NW2d 112 (1987).

Chapter 8 of the Business Corporation Act (BCA),
450.1801 *et seq.*, governs the dissolution and winding up
of Michigan corporations. Of particular relevance in the
present case, the BCA provides that "a dissolved corpo-
ration, its officers, directors and shareholders shall
continue to function in the same manner as if dissolu-
tion had not occurred," MCL 450.1834, and that a
dissolved corporation may continue to "sue and be sued
in its corporate name ... in the same manner as if
dissolution had not occurred," MCL 450.1834(e); see
also *Freeman v Hi Temp Products, Inc*, 229 Mich App
92, 96; 580 NW2d 918 (1998) (stating that "the general
rule is that a dissolved corporation can sue and be
sued"). However, the BCA expressly makes MCL
450.1834 "[s]ubject to section 833," which provides that
although "a dissolved corporation shall continue its
corporate existence," it "shall not carry on business
except for the purpose of winding up its affairs ...."
MCL 450.1833. Reading MCL 450.1833 and 450.1834
together as we must, *Crawford Co*, 160 Mich App at 95,
it is clear that a dissolved Michigan corporation may

continue to exist beyond its date of dissolution only until its has concluded "winding up its affairs . . . ." MCL 450.1833.

Under Michigan's former General Corporation Act (GCA), a dissolved corporation had only three years after its date of dissolution for the winding up of corporate affairs. Former MCL 450.75; see also *Striker v Chesler*, 42 Del Ch 578, 585; 217 A2d 31 (1966) (interpreting Michigan's former GCA). Most provisions of the former GCA, including those relating to corporate dissolution and winding up, have now been repealed and replaced by the BCA. MCL 450.2098(b). In contrast to the former GCA, the BCA provides no specific period in which a dissolved corporation must complete the winding up process. We must conclude that the Legislature's omission of such a specific period from the BCA was intentional. *People v Stickle*, 156 Mich 557, 562-563; 121 NW 497 (1909); see also *In re Herbach Estate*, 230 Mich App 276, 286; 583 NW2d 541 (1998).

But the omission of such a time limitation from the BCA does not mean that a dissolved corporation may continue winding up its affairs indefinitely. We are persuaded that there necessarily must be an end to the winding up process—a point in time when a dissolved corporation is terminated and ceases to exist for all purposes. Otherwise, a dissolved corporation would languish in perpetuity, affording no true closure or finality for the stakeholders of the dissolved entity. This surely cannot be what the Legislature intended when it provided for the orderly liquidation and winding up of dissolved corporations. See MCL 450.1833; see also *Gilliam v Hi-Temp Products, Inc*, 260 Mich App 98, 113; 677 NW2d 856 (2003). Instead, we believe that the Legislature intended " 'to establish a definite point in time when a corporation ceases to exist.' " *Id.* at 124,

quoting *Blankenship v Demmler Mfg Co*, 89 Ill App 3d 569, 574; 411 NE2d 1153 (1980); see also *Bishop v Schield Bantam Co*, 293 F Supp 94, 96 (ND Iowa, 1968).

We conclude that even though Chapter 8 of the BCA does not provide an express time limitation for the winding up of corporate affairs, a corporation must finish liquidating its business and complete the winding up process within a reasonable time.[8] This is consistent with the general rule that when a statute does not provide a specific time limit for the completion of a particular task, a reasonable time is implied. *Christian v Wayne Circuit Judge*, 219 Mich 37, 40; 188 NW 359 (1922); *Mills v Stankiewicz*, 27 Mich App 483, 489; 183 NW2d 602 (1970); see also *Smith v Michigan Basic Prop Ins Ass'n*, 441 Mich 181, 191 n 15; 490 NW2d 864 (1992). Courts in other jurisdictions have reached a similar conclusion. See *Lynch v Vincent*, 55 F Supp 44, 48 (WD Mo, 1944) (observing that although the pertinent Missouri statute did not provide a particular time limit for winding up and liquidating a dissolved corporation, "[i]n the absence of a fixed period, a reasonable time should be allowed"); *Holliday v Cornett*, 224 Ky 356, 359; 6 SW2d 497 (1928) (holding that although the relevant Kentucky statute "place[d] no limitation on the time allowed" for the winding up of a dissolved corporation, it "necessarily contemplate[d] a reasonable length of time"); see also *Doting v Trunk*, 259 Mont 343, 352; 856 P2d 536 (1993) (holding that although a Montana statute did not specify a particular time for

---

[8] We note that although Flint Cold Storage was incorporated under the former GCA, its dissolution and liquidation were governed by the BCA, not the former GCA. The BCA was enacted as 1972 PA 284, and took effect on January 1, 1973, more than two years before the dissolution of Flint Cold Storage. Except as otherwise provided, the provisions of the BCA govern all corporations that were in existence on the effective date of the BCA. See MCL 450.1121; MCL 450.1127(1).

winding up a partnership, "the winding up of partnership affairs should be completed within a reasonable time").

Applying this rule in the present case, we conclude that Flint Cold Storage had only a reasonable time after dissolution in which to wind up its affairs before ceasing to exist altogether. What constitutes a reasonable time is generally a question of law for the court. See *Smith*, 441 Mich at 191 n 15; *S C Gray, Inc v Ford Motor Co*, 92 Mich App 789, 817; 286 NW2d 34 (1979) (stating that "[w]here the facts are undisputed the question of what is a reasonable time is a question of law"). We can scarcely, if at all, envision a case in which a 32-year winding up period might be considered reasonable. It certainly was not reasonable on the facts of this case. We are compelled to conclude that Flint Cold Storage, which dissolved in 1975, had long since completed the winding up process by the time this action was commenced more than 32 years later.

As noted previously, a dissolved corporation may continue to "sue and be sued in its corporate name . . . in the same manner as if dissolution had not occurred." MCL 450.1834(e). But once a dissolved corporation has finished winding up its affairs, its existence is terminated and it ceases to exist for all purposes. The general rule is that "after the . . . *termination of the existence of a corporation*, no action can be maintained against it, and it has no capacity to sue." 19 Am Jur 2d, Corporations, § 2489, p 567 (emphasis added). We conclude that once the existence of a dissolved corporation has terminated, it loses the powers enumerated in MCL 450.1833 and 450.1834, including the power to sue and be sued. See *BASF Corp v Central Transport, Inc*, 830 F Supp 1011, 1012-1013 (ED Mich, 1993) (observing that "[u]nder Michigan law, [a dissolved corporation] can no

longer be sued once it has completely wound up its affairs and distributed its assets"). Because plaintiff's corporate existence had terminated, it lacked the legal capacity to sue and be sued under the BCA.

Of course, even if a corporate entity has ceased to exist and lacks the general capacity to sue and be sued under state corporate law, it may nonetheless have a limited capacity to sue and be sued under another statute. 9 Fletcher Cyclopedia of the Law of Corporations, § 4266, p 45. For example, some courts have held that a terminated corporation, which has lost the legal capacity to sue and be sued under the law of the state of incorporation, may nonetheless be sued under the specific provisions of the federal Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 USC 9601 *et seq*. See, e.g., *Town of Oyster Bay v Occidental Chem Corp*, 987 F Supp 182, 199 (ED NY, 1997); *Traverse Bay Area Intermediate School Dist v Hitco, Inc*, 762 F Supp 1298, 1301 (WD Mich, 1991). But no such concern is present in the instant case. The statute that creates the cause of action at issue here, MCL 567.247, provides that an action to recover unclaimed property may be commenced by any *"person* who is aggrieved by a decision of the [state treasurer] or whose claim has not been acted upon within 90 days after its filing . . . ." (Emphasis added.) The UUPA defines "[p]erson" as "an individual, business association, state or other government, governmental subdivision or agency, public corporation, public authority, estate, trust, 2 or more persons having a joint or common interest, or any other legal or commercial entity." MCL 567.222(m). As is made clear by this definition, only an existing legal or commercial entity may bring suit to recover unclaimed property under MCL 567.247. Because a *terminated* corporation no longer exists for any purpose, it is not a "person" within

the meaning of the UUPA and accordingly cannot sue to recover unclaimed property pursuant to MCL 567.247. In short, MCL 567.247 provides no exception to the general rule that a terminated corporation may not sue or be sued under Michigan law.

The corporate existence of Flint Cold Storage had been terminated, and the dissolved corporation had ceased to exist for all purposes, sometime before the filing of this action. The circuit court properly determined that Flint Cold Storage lacked the legal capacity to sue. Accordingly, summary disposition was properly granted in favor of defendant pursuant to MCR 2.116(C)(5).

V

Plaintiff contends that Flint Cold Storage was the only party that could have commenced this action and that if the dissolved corporation is not allowed to proceed against defendant in its corporate name, the rightful owners of the $188,679.99 in unclaimed funds will never have the opportunity to recover the property. We do not necessarily agree.

We do acknowledge that Flint Cold Storage would have been the proper party to pursue this action if it had not yet completed the liquidation and winding up process. It is undisputed that defendant is holding the $188,679.99 in the name of Flint Cold Storage, and not in the names of any individual officers or historic shareholders. A dissolved corporation that has not yet completed winding up its affairs may continue "[c]ollecting its assets" and may continue to "sue and be sued in its corporate name . . . in the same manner as if dissolution had not occurred." MCL 450.1833(a); MCL 450.1834(e). It is well settled that a corporation and its shareholders "are different entities in the eye of the

law," *Montgomery v Central Nat'l Bank & Trust Co of Battle Creek*, 267 Mich 142, 147; 255 NW 274 (1934), even when only one individual owns all the company's stock, *Bourne v Muskegon Circuit Judge*, 327 Mich 175, 191; 41 NW2d 515 (1950). Consequently, the general rule is that "a suit to enforce corporate rights . . . must be brought in the name of the corporation and not that of a stockholder, officer or employee." *Michigan Nat'l Bank v Mudgett*, 178 Mich App 677, 679; 444 NW2d 534 (1989). Thus, if the dissolved corporation had still been in existence as a legal entity, it would have been the proper party to maintain this suit.

As we have already concluded in part IV, plaintiff has ceased to exist and can no longer sue or be sued. But this does not necessarily foreclose the possibility that plaintiff's historic shareholders may be able to claim and successfully recover the $188,679.99 in unclaimed funds. By way of analogy, although an action under MCL 567.247 certainly could not be filed in the name of a deceased individual, the deceased individual's estate *would* be authorized to commence such an action for the purpose of recovering unclaimed property held in the deceased's name. Indeed, MCL 567.247 authorizes a "person" to maintain an action to recover unclaimed property, and MCL 567.222(m) defines the word "[p]erson" to include, among other things, an "estate[.]" Similar in some respects to the manner in which a decedent's assets pass to his or her estate upon death, a dissolved corporation's remaining assets pass to its shareholders as beneficial owners once liquidation and winding up is complete and all creditors have been satisfied. *Pontiac Trust Co v Newell*, 266 Mich 490, 497-498; 254 NW 178 (1934); see also *Bruun v Cook*, 280 Mich 484, 495; 273 NW 774 (1937). Like a decedent's estate, we perceive no reason why a terminated corporation's historic shareholders at the time of disso-

lution could not maintain an action under MCL 567.247 to recover unclaimed property held in the name of the terminated corporation. Indeed, defendant has readily admitted on several occasions that the rightful owners of the $188,679.99 are the historic shareholders of Flint Cold Storage at the time of the corporation's dissolution. Quite simply, the problem for plaintiff is not that the $188,679.99 in unclaimed funds can never be recovered, but that this action was commenced and prosecuted by the improper party.

VI

With respect to the parties' arguments concerning the doctrine of standing, we note that standing to sue and capacity to sue are two distinct concepts, which have been conflated by both plaintiff and defendant in this case. *Michigan Chiropractic Council v Comm'r of Financial & Ins Services Office*, 475 Mich 363, 374 n 25; 716 NW2d 561 (2006) (Opinion by YOUNG, J.). The termination of a corporation's existence implicates the entity's legal capacity to sue—not its standing to sue. See *Thomas Industries, Inc v Wells*, 403 Mich 466, 469; 270 NW2d 98 (1978).

VII

Flint Cold Storage had ceased to exist before the time that this suit was filed, and the terminated corporation therefore lacked the legal capacity to sue. Summary disposition was properly granted pursuant to MCR 2.116(C)(5). In light of our resolution of this issue, we need not consider the effect of plaintiff's admission that it could not "produce any documents indicating the names of the individuals who were shareholders and/or their percentage ownership at the time of dissolution of

the corporation." Nor is it necessary to consider the other arguments raised by the parties on appeal.

Affirmed. No costs pursuant to MCR 7.219, a public question having been involved.