*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMY MCCORMICK and ROBERT MCCORMICK,

        Plaintiffs-Appellants,

v

MICHIGAN STATE UNIVERSITY COLLEGE OF LAW,

        Defendant-Appellee.

UNPUBLISHED
July 11, 2024

No. 362932
Ingham Circuit Court
LC No. 22-000007-CK

Before: LETICA, P.J., and N. P. HOOD and MALDONADO, JJ.

PER CURIAM.

Plaintiffs, Amy McCormick and Robert McCormick, appeal as of right the circuit court order granting summary disposition in favor of defendant Michigan State University College of Law (DCL).[1] Plaintiffs were law professors with DCL before it merged with Michigan State University (MSU) in 2020. When DCL and MSU merged, DCL ceased to exist, and any claim plaintiffs had under the contracts or related to possible breach had to be against MSU, which

---

[1] Several related entities are relevant to this case, requiring us to clarify why we refer to "Michigan State University College of Law" as the "Detroit College of Law," or "DCL." The Detroit College of Law was established in 1891. It became affiliated with MSU in 1995, relocated to East Lansing in 1997, and went by "Detroit College of Law at Michigan State University." Then, in April 2004, DCL changed its name to the MSU College of Law. Throughout this period, however, it remained a separate legal entity from MSU, retaining its status as an independent, nonprofit corporation. In October 2018, DCL and MSU entered a memorandum of understanding that contemplated integrating DCL with MSU. That integration was structured as an asset purchase, which was completed on August 17, 2020. The Michigan State University College of Law today is a constituent college of MSU and not an independent corporate entity. But for purposes of this case, plaintiffs sued DCL—the previous corporate entity that was separate from and independent of MSU.

assumed DCL's liabilities. Nonetheless, plaintiffs sued the no-longer-existing DCL. The trial court granted summary disposition in DCL's favor.

On appeal, plaintiffs raise essentially four arguments: (1) MCL 450.2833 (providing that a dissolved corporation shall continue its corporate existence but only conduct affairs for the purpose of winding up its affairs) and MCL 450.2855 (requiring dissolved corporations to make provisions for their debts, obligations, and liabilities, and providing a framework for such provisions) required DCL to address any outstanding liabilities—like its contractual agreements with plaintiffs—as part of its dissolution but failed to do so; (2) although DCL could limit the time within which claimants or creditors could make a claim against DCL, MCL 450.2841a and MCL 450.2842a still required DCL to provide notice of its dissolution to its creditors, which plaintiffs claim it failed to do; (3) a dissolving corporation's windup period must occur after dissolution, not before or at the same time, so the circuit court erroneously concluded that DCL's dissolution and windup occurred simultaneously; and (4) DCL secretly and fraudulently transferred its liabilities to MSU, which had the effect of reducing the limitations period of plaintiffs' claims from what would have been six years under MCL 600.5807, to one year because MSU is a state entity, and there is a one-year limitations period for filing a notice of intent to sue in the Court of Claims.

We disagree. DCL properly addressed its outstanding liabilities as part of its dissolution. It had dissolved and wound up as of October 7, 2020, approximately a year and three months before plaintiffs filed their lawsuit. Because DCL ceased to exist once it dissolved and wound up, and could therefore no longer sue or be sued, the circuit court properly concluded that plaintiffs' lawsuit was barred. DCL was not obligated to provide notice of the dissolution because the language of the statutes on which plaintiffs rely is "may," a permissive, not mandatory, term. Finally, plaintiffs waived their argument about DCL's alleged fraudulent transfer of its assets and liabilities because it did not raise that issue below. For these reasons and those stated below, we affirm.

I. BACKGROUND

This case arises out of DCL's merger with MSU and the merger's effect on the employment agreements of plaintiffs who formerly were law professors at DCL. Plaintiffs are husband and wife and were tenured professors at DCL. In April 2013, they each agreed to resign their tenured positions in exchange for certain contractual guarantees like retirement payments, health insurance, and other benefits. The specifics are not relevant to this appeal. Broadly speaking, under Robert's agreement, he retired in exchange for certain retirement benefits. Amy's agreement allowed her to continue in an emeritus professor position, allowing her to teach one course per academic year, while continuing to receive full employee healthcare coverage—the same as coverage provided to tenured faculty. Her agreement explicitly provided, "It is understood that you would not be agreeing to resign your tenured position voluntarily were it not for the Law College's agreement to provide the same health care insurance coverage that is provided to members of the tenured faculty."

In October 2018, DCL and MSU entered a memorandum of understanding contemplating integration of DCL into MSU. The integration would be structured as an asset purchase.

According to Amy, beginning in June 2019 and throughout that year, she had several communications with DCL representatives about its obligations to plaintiffs under the April 2013 agreements and the possible effect of the integration of DCL with MSU. The communications became increasingly litigation-oriented. Amy expressed openness to negotiating a "reasonable resolution," but saw the options as either honoring her contract or buying it out. The parties did not reach such a resolution.

As part of the integration of DCL into MSU, DCL and MSU entered an employee transition agreement that terminated the employment of all DCL employees on December 31, 2019, and offered employment with MSU beginning on January 1, 2020, to transitioning DCL employees.[2] It simply transitioned DCL employees' employment to MSU, on terms consistent with MSU's employment policies and practices.

The asset purchase agreement, on the other hand, provided that DCL would sell, assign, transfer, convey, and deliver all of its assets to MSU, while MSU would "assume and agree to pay, perform and discharge" all of DCL's liabilities and obligations. The asset purchase agreement was signed on December 12, 2019.

On December 31, 2019, under the terms of the employment transition agreement, all DCL employees' employment was terminated. Though Amy appears to have been provided an employment package requiring her to apply to work for MSU, she did not begin working there after DCL terminated her employment on December 31, 2019.

On August 17, 2020, DCL and MSU completed the integration of DCL into MSU. On October 7, 2020, DCL filed a certificate of dissolution with the Michigan Department of Licensing and Regulatory Affairs. The certificate indicated that DCL's dissolution was proposed and approved "at a meeting of directors of a corporation organized on a nonprofit directorship held on" August 14, 2020. MSU viewed DCL as dissolved and simultaneously wound up on October 7, 2020.

On January 5, 2022, plaintiffs sued DCL in Ingham Circuit Court, raising four claims against it: (1) breach of contract, (2) fraud and silent fraud, (3) failure of consideration, and (4) violation of the Nonprofit Corporation Act (NCA), MCL 450.2101 *et seq*. They alleged that DCL breached their contracts by depriving Amy of employment, compensation, and benefits, and by depriving Robert of consideration for his agreement with DCL. Plaintiffs also alleged that DCL engaged in fraud and silent fraud by securing plaintiffs' resignation as tenured employees in exchange for certain promises but intentionally failed to "disclose the possibility that [DCL] might dissolve and cease to exist thus rendering its promises nugatory[.]" They asserted that they would not have resigned their tenured faculty positions, which were valuable assets, but for DCL's promises in the April 2013 agreement. And plaintiffs alleged that DCL violated the NCA by

---

[2] The record is unclear as to whether MSU offered employment to all of the DCL employees whose employment agreements DCL terminated on December 31, 2019. Without citing any supporting materials, plaintiffs stated that MSU offered comprehensive employment packages requiring "each faculty member . . . to resign from DCL, apply for employment with MSU as a new hire, and fully release DCL from any claims of liability."

failing to resolve its obligations to plaintiffs, by failing to pay its debts and liabilities, and by disregarding its obligations under MCL 450.2855.

In February 2022, DCL filed a notice of transfer with the Ingham Circuit Court indicating that plaintiffs' claims were within the jurisdiction of the Court of Claims and that DCL was transferring the case to the Court of Claims. In March 2022, the Court of Claims concluded that DCL was a private entity, not a state entity, so it lacked jurisdiction over the case. It, therefore, remanded the case to the Ingham Circuit Court where the case continued.

In lieu of answering the complaint, DCL moved for summary disposition under MCR 2.116(C)(10). It argued that it was dissolved by the time plaintiffs sued it, and the only issue for the circuit court to decide was whether DCL had wound up by the time plaintiffs filed suit. DCL noted that this case was governed by the NCA, which contains provisions allowing a dissolved corporation to sue or be sued. DCL asserted that it was "simultaneously dissolved and wound up on October 7, 2020," noting it had no employees and all of its assets, contracts, and grants had been sold, transferred, assigned, or terminated. Plaintiffs responded, arguing that MCL 450.2855 required DCL, as a dissolving corporation, to provide for its liabilities as part of the winding up process, but DCL failed to do so. They also argued that DCL failed to provide notice stating the end date for making a claim against the dissolving entity.

The same day as their response to DCL's dispositive motion, plaintiffs moved for summary disposition on their breach-of-contract claim and their claim that DCL violated the NCA. Regarding the claim related to the NCA, plaintiffs argued that DCL, under MCL 450.2855, had a statutory obligation as a dissolving corporation to pay or provide for its debts and liabilities, which included its obligations to plaintiffs. According to plaintiffs, DCL breached those obligations by claiming it had wound up despite leaving outstanding claims. Regarding their breach-of-contract claim, plaintiffs asserted that the terms of their contracts were clear: Amy "was to be employed as long as she wished and was to be provided compensation and emoluments of employment including employer paid health insurance for her and for Robert McCormick." They asserted there was no factual dispute that DCL breached plaintiffs' contracts by discharging Amy in 2019.

DCL responded to plaintiffs' motion for summary disposition. Though DCL relied on the arguments in its motion for summary disposition, it responded to several of plaintiffs' arguments. DCL asserted that it complied with MCL 450.2855 when it made provisions for its debts, obligations, and liabilities "through [MSU] acquiring [DCL's] assets and liabilities . . . ." It also argued that plaintiffs previously had a remedy of suing MSU under a successor theory of liability.[3]

---

[3] Plaintiffs filed another lawsuit based on the same circumstances at issue here against MSU in the Court of Claims. That case is currently pending in this Court in Docket No. 367598. In this case, on September 12, 2023, plaintiffs moved for immediate consideration, to consolidate this case with Docket No. 367598, and to adjourn oral argument. On September 14, 2023, this panel granted plaintiffs' motion for immediate consideration but denied their motions to consolidate and adjourn. *McCormick v Mich State Univ College of Law*, unpublished order of the Court of Appeals, entered September 14, 2023 (Docket No. 362932).

But this avenue was no longer available to plaintiffs, DCL asserted, because they failed to comply with the notice provision in the Court of Claims Act, MCL 600.6401 *et seq*. And DCL argued that, even if it could be sued, its alleged liability under plaintiffs' contracts was extinguished when the contractual promises became impossible to perform due to supervening impossibility.

Following a hearing, the trial court granted DCL's motion for summary disposition. The trial court found that, as of October 7, 2020, DCL "was properly dissolved and simultaneously wound up." It concluded that the record supported a finding that DCL complied with MCL 450.2855 by providing for its debts, obligations, and liabilities through the asset purchase agreement with MSU. The trial court therefore found that, because DCL was "properly dissolved and wound up" by the time plaintiffs sued DCL on January 5, 2022, plaintiffs' claims were barred. The trial court also found no notice violation because notice was optional, not mandatory, under the provisions plaintiffs relied on (MCL 450.2841a and MCL 450.2842a). The trial court denied plaintiffs' motion for summary disposition "for the reasons that have already been stated with respect to the law." It found MCL 450.2851 (related to supervision) inapplicable because there was "no entity for this Court to supervise." The trial court indicated that any potential case "should be properly filed with the Court of Claims" because any argument related to the limitations period was a "decision not to be made by this Court but by the Court of Claims."

Plaintiffs moved for reconsideration, which the trial court denied. This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. (citation omitted). Such a motion "may only be granted when there is no genuine issue of material fact." *Id*. (citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

We review questions of statutory interpretation de novo. *Wells Fargo Rail Co v Dep't of Treasury*, 344 Mich App 351, 358; 1 NW3d 373 (2022).

> The goal of statutory interpretation is to determine and apply the intent of the Legislature. The first step in determining legislative intent is to examine the specific language of the statute. If the language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. The provisions of a statute must be read in the context of the entire statute to produce a harmonious whole. This Court must consider the object of the statute and the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose. [*Yopek v Brighton Airport Ass'n, Inc*, 343 Mich App 415, 424; 997 NW2d 481 (2022) (quotation marks and citations omitted).]

III. DCL PROPERLY ADDRESSED OUTSTANDING LIABILITIES DURING DISSOLUTION

Plaintiffs first argue that MCL 450.2833 and MCL 450.2855 required DCL to address any outstanding liabilities—including its contractual agreements with plaintiffs—as part of its dissolution, but it failed to do so. We agree that those statutory provisions imposed that obligation on DCL, but we disagree with plaintiffs that DCL failed to comply with those obligations.

Chapter 8 of the NCA governs the dissolution and winding up of Michigan nonprofit corporations. Particularly relevant here, the NCA provides that "a dissolved corporation, its officers, directors, shareholders, and members shall continue to function in the same manner as if dissolution had not occurred." MCL 450.2834. It also provides that a dissolved nonprofit corporation "may sue and be sued in its corporate name . . . as if dissolution had not occurred." MCL 450.2834(e). The NCA, however, expressly makes MCL 450.2834 "[s]ubject to section 833," which provides that although "a dissolved corporation shall continue its corporate existence," it "shall not conduct affairs except for the purpose of winding up its affairs . . . ." MCL 450.2833. In full, MCL 450.2833 provides:

> Except as a court may otherwise direct, a dissolved corporation shall continue its corporate existence but shall not conduct affairs except for the purpose of winding up its affairs by:
>
> (a) Collecting its assets.
>
> (b) Selling or otherwise transferring, with or without security, assets which are not to be distributed in kind pursuant to section 855.
>
> (c) Paying its debts and other liabilities.
>
> (d) Doing all other acts incident to liquidation of its affairs.

Reading MCL 450.2833 and MCL 450.1834 together as this Court must, *Yopek*, 343 Mich App at 424, a dissolved Michigan nonprofit corporation may continue its existence past its date of dissolution only until it has concluded "winding up its affairs . . . ." MCL 450.2833. See *Flint Cold Storage v Dep't of Treasury*, 285 Mich App 483, 495-496; 776 NW2d 387 (2009), (reaching the same conclusion in the context of provisions of the Business Corporation Act (BCA) that contains identical language to that of the NCA); MCL 450.1833; MCL 450.1834.

In *Flint Cold Storage*, 285 Mich App at 495-497, this Court analyzed whether the Legislature's intentional omission of a time limit from the BCA meant a dissolved for-profit corporation could continue winding up its affairs indefinitely. This Court concluded that it could not. *Id*. at 496. It explained:

> We are persuaded that there necessarily must be an end to the winding up process—a point in time when a dissolved corporation is terminated and ceases to exist for all purposes. Otherwise, a dissolved corporation would languish in perpetuity, affording no true closure or finality for the stakeholders of the dissolved entity. This surely cannot be what the Legislature intended when it provided for the orderly

liquidation and winding up of dissolved corporations. Instead, we believe that the Legislature intended to establish a definite point in time when a corporation ceases to exist. [*Id.* at 496-497 (quotation marks and citations omitted).]

Thus, the *Flint Cold Storage* Court concluded that although the BCA did "not provide an express time limitation for the winding up of corporate affairs, a corporation must finish liquidating its business and complete the winding up process within a *reasonable time*." *Id.* at 497 (emphasis added). This Court determined that this was "consistent with the general rule that when a statute does not provide a specific time limit for the completion of a particular task, a reasonable time is implied." *Id.* The question of "[w]hat constitutes a reasonable time is generally a question of law for the court." *Id.* at 498. The *Flint Cold Storage* Court also concluded that once the dissolved corporation's existence has terminated, "it loses the powers enumerated in MCL 450.1833 and MCL 450.1834, including the power to sue and be sued." *Id.* Because *Flint Cold Storage* involved statutory provisions essentially identical with those at issue in this case, we are persuaded that we should reach the same conclusions here under the NCA.

MCL 450.2855 imposes several obligations on dissolved corporations. Relevant here, MCL 450.2855(1)(a) states:

> (1) All of the following apply if a corporation is dissolved:
>
> (a) The corporation shall pay or make provision for its debts, obligations, and liabilities. Compliance with this subdivision requires that, to the extent that a reasonable estimate is possible, provision is made for those debts, obligations, and liabilities that are anticipated to arise after the effective date of dissolution. A corporation is not required to make provision for any debt, obligation, or liability that is or is reasonably anticipated to be barred under section 841a or 842a. The fact that corporate assets are insufficient to satisfy claims that arise after a dissolution does not create a presumption that the corporation has failed to comply with this subdivision. A corporation is considered to have made adequate provision for any debt, obligation, or liability of the corporation if payment is assumed or guaranteed in good faith by 1 or more financially responsible corporations, other persons, or the United States government or an agency of the United States government and the provision, including the financial responsibility of the corporations or other persons, was determined in good faith and with reasonable care by the board to be adequate.

The circuit court did not err by finding that DCL "was properly dissolved and simultaneously wound up" as of October 7, 2020. DCL filed the certificate of dissolution on October 7, 2020, so that is the day on which DCL dissolved. See MCL 450.2803(2) (providing that "[t]he dissolution of the corporation shall be effected by a majority of the incorporators or directors[] executing and filing a certificate of dissolution"). That is also the day on which DCL wound up its affairs. According to MSU, as of October 7, 2020, DCL had finished collecting its assets, selling or otherwise transferring assets that were not to be distributed in kind under MCL 450.2855, paying its debts and other liabilities, and doing all other acts incident to liquidation of its affairs. And as of October 7, 2020, DCL had no assets because DCL and its contracts and grants were sold, transferred, assigned, or terminated under the asset purchase agreement with

MSU. In other words, as part of the asset purchase agreement that was signed on December 12, 2019 (before DCL terminated Amy on December 31, 2019), DCL sold, assigned, transferred, conveyed, and delivered all of its assets to MSU. MSU "assume[d] and agree[d] to pay, perform and discharge" all of DCL's liabilities and obligations. Plaintiffs' April 2013 agreements and any claims they may have had against DCL come within the contractual language of the asset purchase agreement and, therefore, DCL provided for this potential liability before dissolving and winding up.

Contrary to plaintiffs' argument on appeal, nothing in the relevant statutory provisions provides that the windup period must occur after dissolution. Under MCL 450.2833, though a dissolved corporation must continue its corporate existence and can only conduct affairs for the purposes of winding up those affairs, nothing in that statute restricts the corporation's ability to wind up its affairs before or even simultaneous with its dissolution. Plaintiffs themselves concede that "a particular corporation could pay a debt prior to dissolution . . . So, if a corporation can pay off debt before dissolution, something that is part of winding up, see MCL 450.2833(c), then there is nothing stopping it from also completing other requirements of the windup process before dissolution." In this respect, the trial court correctly concluded that DCL was properly dissolved and simultaneously wound up.

## IV. NOTICE

Plaintiffs next argue that to limit the time within which a claim could be brought against it, MCL 450.2841a and MCL 450.2842a required DCL to provide notice of its dissolution to its creditors. Its failure to provide that notice, they contend, means that DCL "did not establish an end date barring subsequent claims." We disagree.

The relevant portion of MCL 450.2841a provides:

> (1) A dissolved corporation *may* notify its existing claimants in writing of the dissolution of the corporation at any time after the effective date of the dissolution. [Emphasis added.]

And the relevant portion of MCL 450.2842a provides:

> (1) In addition to providing notice under section 841a, a dissolved corporation *may* also publish notice of dissolution at any time after the effective date of dissolution and request that persons with claims against the corporation present them in the manner described in the notice. [Emphasis added.]

This is a relatively straightforward issue of the unambiguous statutory language. The term "may" is permissive, not mandatory. See *True Care Physical Therapy, PLLC v Auto Club Group Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 362094); slip op at 7 (quotation marks and citation omitted) ("Under the plain-meaning rule, courts must give the ordinary and accepted meaning to the mandatory word 'shall' and the permissive word 'may' unless to do so would frustrate the legislative intent as evidenced by other statutory language or by reading the statute as a whole."); *In re Bail Bond Forfeiture*, 496 Mich 320, 328; 852 NW2d 747 (2014) ("While the term 'may' is permissive, not mandatory, the term 'shall,' as discussed, is a 'mandatory term, not a permissive one[.]' ") (citation omitted); *Manuel v Gill*, 481 Mich 637,

647; 753 NW2d 48 (2008) ("In general, our courts have said that the term 'may' is 'permissive,' as opposed to the term 'shall,' which is considered 'mandatory[.]' ") (citation omitted).  So, under both MCL 450.2841a and MCL 450.2842a, a dissolved corporation like DCL could send notice of its dissolution to claimants after dissolution, but did not *have* to as plaintiffs contend in their main brief on appeal.  We observed that plaintiffs appear to concede in their reply brief that the notice of dissolution is optional under MCL 450.2841a.  We therefore conclude that under the terms of the statute, DCL was not required to send notice of its dissolution to plaintiffs.[4]

## V.  PLAINTIFFS WAIVED THEIR FRAUDULENT TRANSFER ARGUMENT

Finally, plaintiffs argue that DCL fraudulently transferred its assets and liabilities to MSU.  They contend that this was done to circumvent the six-year limitations period that would have applied to their claims, instead imposing a one-year limitations period because of MSU's status as a state entity.  Unlike plaintiffs' arguments that DCL failed to comply with its statutory obligations by not addressing outstanding liabilities and that MCL 450.2841a and MCL 450.2842a required DCL to provide notice of its dissolution, which plaintiffs claim it failed to do, plaintiffs did not raise this issue before the trial court.  Therefore, it is waived.  See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 2-5 .  We decline to address this issue on this basis.

An issue must be raised in or decided by the trial court for it to be preserved for appeal. *Glasker-Davis v Auvenshire*, 333 Mich App 222, 227; 964 NW2d 809 (2020).  "[I]ssue preservation requirements only impose a general prohibition against raising an issue for the first time on appeal."  *Id*.  "Consistent[] with that principle, a party . . . need not preserve an objection to 'a finding or decision' made by the trial court . . . ."  *Id*., quoting MCR 2.517(A)(7).

---

[4] We also reject the alternative argument plaintiffs raise in their reply brief.  Despite their arguments about the applicability of MCL 450.2841a and MCL 450.2842a below and in their main brief on appeal, plaintiffs in their reply brief on appeal now appear to say that these provisions are irrelevant.  Plaintiffs assert that these provisions only apply to notice of dissolution (which is true) and, as stated, concede that notice to creditors of the corporate dissolution is optional under MCL 450.2841a.  Now, however, plaintiffs contend that "notice to creditors of *transfer of liabilities* to a successor is mandatory if the transfer of liabilities is how a dissolving corporation 'made provision for' claims of creditors."  Plaintiffs provide no supporting authority—no statutory provisions, caselaw, or otherwise—for this position.  So not only is this inconsistent with their position throughout this case—including through their initial brief on appeal—but they have also abandoned the issue by not properly briefing it.  See *Seifeddine v Jaber*, 327 Mich App 514, 520; 934 NW2d 64 (2019) (indicating that "[f]ailure to adequately brief an issue constitutes abandonment"); *St. Clair v XPO Logistics, Inc*, 344 Mich App 418, 436; 1 NW3d 821 (2022), reversed in part on other grounds by *St. Clair v XPO Logistics, Inc*, ___ Mich ___ (2024) (Docket Nos. 165210 and 165211) (quotation marks and citation omitted) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position").  We, therefore, reject this alternative argument as abandoned.

Nevertheless, "so long as the issue itself is not novel, a party is generally free to make a more sophisticated or fully developed argument on appeal than was made in the trial court." *Id*. at 228.

This Court has historically applied two different standards to unpreserved issues in the civil context: plain-error, see, e.g., *Mr Sunshine v Delta College Bd of Trustees*, 343 Mich App 597, 601; 997 NW2d 755 (2022); *Demski v Petlick*, 309 Mich App 404, 426-427, 873 NW2d 596 (2015); *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000), and the so-called "raise-or-waive" rule, see, e.g., *In re Conservatorship of Murray*, 336 Mich App 234, 240-242; 970 NW2d 372 (2021); *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 192-194; 920 NW2d 148 (2018) (applying the so-called raise-or-waive standard, but "acknowledge[ing] that decisions of our Supreme Court and this Court have applied the plain-error standard of review to certain unpreserved issues in the civil context"). Our Supreme Court has yet to state definitively which standard is the appropriate standard for the civil context. See *Shah*, 324 Mich App at 194 n 5 (noting that our Supreme Court has applied plain-error in certain civil contexts; declining to decide "under what circumstances the plain-error standard of review should be applied in the civil context"). But see *Tolas*, ___ Mich App at ___; slip op at 2-5 (holding that our Supreme Court requires application of the so-called raise-or-waive standard).

But recently, a panel of this Court resolved this apparent conflict, holding that the plain-error test does not apply in civil cases and appellate courts instead apply the raise-or-waive rule. *Id*. at ___; slip op at 2-5. Regardless, this Court may still "overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*. at ___; slip op at 3 (quotation marks and citations omitted). As required by *Tolas*, we treat this argument as waived and decline to address it.

We affirm.

/s/ Anica Letica
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado

-10-