*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TRUSTLINK EQUITIES, LLC,

        Plaintiff-Appellant,

v

ST CLAIR COUNTY SHERIFF SALE
SURPLUS,

        Defendant,

and

DITECH FINANCIAL, LLC,

        Defendant-Appellee.

UNPUBLISHED
January 22, 2019

No. 341883
St. Clair Circuit Court
LC No. 2017-001657-PZ

Before: MARKEY, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Plaintiff, Trustlink Equities, LLC, appeals as of right the trial court's order granting the motion of defendant, Ditech Financial, LLC, for release of surplus funds after a mortgage foreclosure sale. We affirm.

## I. BACKGROUND

Brian K. Simms and Charlene A. Simms ("the mortgagors") owned real estate located in Mussey, Michigan ("the Property"). In 2003, the mortgagors granted a first mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), and that mortgage was subsequently assigned to Federal National Mortgage Association. In 2006, the mortgagors granted a junior mortgage to MERS, and that mortgage was subsequently assigned to The Bank of New York Mellon Trust Company, N.A., as Trustee for GMACM Home Equity Loan Trust 2006-HE3 ("the Bank").

On May 31, 2017, the day before the St. Clair County Sheriff conducted a mortgage foreclosure sale of the Property on the first mortgage, the mortgagors quitclaimed their interest in the Property to plaintiff. That same day, the mortgagors also granted an assignment of their right

to any surplus proceeds from the foreclosure sale to plaintiff, in exchange for payment of $500. The assignment document conveyed to plaintiff "any and all right, title and interest to any mortgage sale surplus funds and/or overbid funds or proceeds as allowed under law, with respect to the mortgage foreclosure" of the Property.

On June 1, 2017, the Sheriff conducted a mortgage foreclosure sale of the Property on the first mortgage. Plaintiff submitted the highest bid at the sheriff's sale, purchased the Property for $239,000, and received a sheriff's deed. The $239,000 foreclosure sale generated a surplus of $77,490.54 over the amount due on the senior mortgage on the Property, but did not generate a surplus sufficient to pay the junior mortgage on the Property, on which $162,497.12 remained owing. Nonetheless, the proceeds from the sale of the Property to plaintiff satisfied the first mortgage and the Sheriff received and deposited the $77,490.54 in surplus funds with the St. Clair County Treasurer.

On June 2, 2017, plaintiff filed a document with the Treasurer, seeking payment of the $77,490.54 surplus funds as assignee of the mortgagors. One of the primary issues on appeal concerns whether this filing qualified as a "demand" or as a "claim" under MCL 600.3252. Plaintiff filed with the Treasurer a document titled "Verified Claim for Turn-Over of Proceeds of Sale." The document did not use the word "demand." In addition to its title, the document stated that plaintiff "makes a *claim* for the proceeds from the mortgage foreclosure sale" (emphasis added). In the document, plaintiff alleged the amount owed on the first mortgage, the amount that it bid for the property at the sheriff's sale, and the amount of surplus created over and above the amount owed on the first mortgage. Plaintiff further alleged in the document that, as the assignee of the mortgagors, it was entitled to disbursement of the surplus funds received by the Sheriff and deposited with the Treasurer.

Seven days later, on June 9, 2017, Ditech ("defendant")[1] filed a document with St. Clair County seeking payment of the surplus funds on behalf of the Bank, in an attempt to partially satisfy the amount that remained owing on the junior mortgage. This document was titled "Verified Claim for Surplus Proceeds of Sale" and it stated that defendant, on behalf of the Bank, "makes a claim for the surplus proceeds in the sum of $77,490.54 from the June 1, 2017 foreclosure sale" of the Property (defendant's "first claim"). In that document, defendant stated that the "basis for the claim for surplus proceeds of sale is a junior mortgage" granted by the mortgagors to MERS. Defendant stated that the original principal balance of the junior mortgage was $160,550 and that the total amount due on the junior mortgage, as of June 1, 2017, was $162,497.12. Defendant further stated that the junior mortgage was "to be assigned to" the Bank at some point in the future. Therefore, on the date defendant filed its first claim on behalf of the Bank, the Bank did not yet hold the junior mortgage.

Neither the Sheriff nor the Treasurer paid anyone the surplus funds. Having received two documents, a "Verified Claim for Turn-Over of Proceeds of Sale" and a "Verified Claim for Surplus Proceeds of Sale," both purporting to be "claims" to the same surplus funds, the county

---

[1] Although the St. Clair County Sheriff Sale Surplus was also named as a defendant in this case, it is not a party to this appeal. Therefore, we will refer to Ditech as defendant.

officials took no action, effectively deferring the dispute between plaintiff and defendant for resolution by the trial court.

On June 21, 2017, plaintiff filed a petition with the trial court under MCL 600.3252, requesting that the trial court award it the surplus foreclosure proceeds. In that petition, plaintiff specifically referenced defendant and argued that defendant was not entitled to payment of the surplus funds because the Bank held no interest in a junior mortgage on the date of the foreclosure sale. On the same day, plaintiff filed a motion requesting that the trial court award it the surplus foreclosure proceeds. In its motion, plaintiff again stated that it had filed a "claim" with the Treasurer seeking the surplus funds, and did not allege that it had filed a "demand" under MCL 600.3252.

On July 10, 2017, defendant filed a response to plaintiff's motion for distribution of the surplus foreclosure proceeds. In its supporting brief, defendant argued that it timely filed a "claim" for distribution of the surplus proceeds, on behalf of the Bank. In the alternative, defendant argued that, even if the Bank was not a proper "claimant" under the surplus statute, the Bank was nonetheless an interested party in the surplus funds. Therefore, on behalf of the Bank, defendant applied to the trial court "for a taking of proofs, if necessary, for the distribution of the proceeds" of the foreclosure sale. On July 10, 2017, defendant also filed a competing motion and petition for distribution of the surplus proceeds from the sheriff's sale, along with affirmative defenses to plaintiff's petition for disbursement of the surplus foreclosure proceeds. In those affirmative defenses, defendant claimed that (1) MCL 600.3252 does not require that a junior mortgagee have a recorded interest in the real property, (2) plaintiff's assignment of the mortgagor's rights did not appear to be an arms-length transaction, and (3) plaintiff was effectively seeking a refund of the amount by which its bid at the foreclosure sale exceeded the amount owed on the first mortgage.

On July 13, 2017, plaintiff filed an answer to defendant's petition. In its answer, plaintiff specifically stated that it did "not challenge the right of a mortgage servicer to act on behalf of a mortgage holder."[2] Nonetheless, plaintiff argued that a proper claimant of surplus funds "must be a subsequent mortgagee or lien holder encumbering the real estate as of the date of the mortgage foreclosure sale and the date of filing its claim." Plaintiff argued that the Bank held no legal interest in the second mortgage on June 1, 2017, the date of the foreclosure sale, or on June 9, 2017, the date when defendant filed its first claim, because defendant's first claim stated that the junior mortgage was "to be assigned to" the Bank at some point in the future. Therefore, plaintiff argued that it, rather than defendant, was entitled to the surplus proceeds, despite the undisputed existence of an unsatisfied junior mortgage on the Property.

The trial court held a hearing on the parties' competing motions for disbursement of the surplus funds. Plaintiff stated at the hearing that it had no objection to defendant asserting a claim on behalf of the Bank, in a representative capacity:

---

[2] Plaintiff attempts to assert a contrary argument on appeal. For the reasons explained below, we conclude that plaintiff has waived any argument that defendant, as a mortgage servicer, could not act on behalf of the Bank for purposes of filing a "claim" for the surplus proceeds in this case.

*The Court*: Or, or as, as, as they—I mean, Ditech is not—they're, they're making—they're asserting a claim on behalf of a client in a representative capacity.

[*Plaintiff's Counsel*]: And I, I recognize *they can do that*. I don't have a problem with that. [Emphasis added.]

At the close of the motion hearing, the trial court allowed the parties additional time to brief defendant's ability to seek a disbursement of the surplus funds, given the fact that the Bank finalized its assignment of the junior mortgage after the foreclosure sale on the senior mortgage occurred. Both parties submitted that additional briefing. In addition to its supplemental briefing, and in response to plaintiff's objections regarding the date on which the Bank acquired its assignment of the junior mortgage, defendant filed a second claim (defendant's "second claim"). In that document, defendant again stated that the "basis for the claim for proceeds from the sale is [a] junior mortgage" originally granted by the mortgagors to MERS. Defendant further stated that, at that point, the junior mortgage "has been assigned" to the Bank. Defendant's second claim did not repeat the details contained in its first claim regarding the amount of the original principal balance of the junior mortgage or the total amount then due on the junior mortgage.

After receiving and considering the parties' supplemental briefs, the trial court issued an opinion and order awarding defendant, on behalf of the Bank as holder of the junior mortgage, the surplus funds created by the mortgage foreclosure sale. Plaintiff now appeals.

## II.  ANALYSIS

## A.  THE SURPLUS STATUTE

MCL 600.3252 (the "surplus statute") provides a process and criteria for the distribution of surplus funds created by a mortgage foreclosure sale. The statute provides:

> If after any sale of real estate, made as herein prescribed, there shall remain in the hands of the officer or other person making the sale, any surplus money after satisfying the mortgage on which the real estate was sold, and payment of the costs and expenses of the foreclosure and sale, the surplus shall be paid over by the officer or other person on demand, to the mortgagor, his legal representatives or assigns, unless at the time of the sale, or before the surplus shall be so paid over, some claimant or claimants, shall file with the person so making the sale, a claim or claims, in writing, duly verified by the oath of the claimant, his agent, or attorney, that the claimant has a subsequent mortgage or lien encumbering the real estate, or some part thereof, and stating the amount thereof unpaid, setting forth the facts and nature of the same, in which case the person so making the sale, shall forthwith upon receiving the claim, pay the surplus to, and file the written claim with the clerk of the circuit court of the county in which the sale is so made; and thereupon any person or persons interested in the surplus, may apply to the court for an order to take proofs of the facts and circumstances contained in the claim or claims so filed. Thereafter, the court shall summon the

claimant or claimants, party, or parties interested in the surplus, to appear before him at a time and place to be by him named, and attend the taking of the proof, and the claimant or claimants or party interested who shall appear may examine witnesses and produce such proof as they or either of them may see fit, and the court shall thereupon make an order in the premises directing the disposition of the surplus moneys or payment thereof in accordance with the rights of the claimant or claimants or persons interested.

In the case of *In re $55,336.17 Surplus Funds*, 319 Mich App 501; 902 NW2d 422 (2017), this Court explained the standards that this Court must apply when construing the proper meaning and application of the surplus statute. As this Court stated:

This Court reviews de novo questions of statutory interpretation. Our primary goal in statutory interpretation is to reasonably infer the legislative intent as evidenced by the statutory language. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. If the intent of the Legislature is not clear, courts must interpret statutes in a way that gives effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory. Words and phrases used in a statute should be read in context with the entire act and assigned such meanings as to harmonize with the act as a whole. Further, statutes that relate to the same subject or that share a common purpose are in pari materia and must be read together as one law, even if they contain no reference to one another and were enacted on different dates. [*Id.* at 506-507 (cleaned up).]

## B. A "DEMAND" UNDER THE SURPLUS STATUTE

Plaintiff first argues that MCL 600.3252 requires that all surplus proceeds created by a foreclosure sale must be paid to the mortgagor's assignee "on demand." Plaintiff argues that the statute does not define the form of a "demand" but merely provides that the surplus shall be paid over "on demand, to the mortgagor, his legal representatives or assigns." Plaintiff argues that its June 2, 2017 submission to the Treasurer was a "demand," but was not a "claim," for purposes of the surplus statute. We conclude that plaintiff did, in fact, file a "demand" as contemplated under the surplus statute, even though plaintiff frequently and inartfully characterized its filing as a "claim."

The trial court recognized that the surplus statute does not define the terms "demand" and "claim." Therefore, the trial court held that the usual and customary meanings of those terms applied when interpreting the statute as a whole. "Where a word is not defined within a statute, it should be given its plain and ordinary meaning, and a court may consult dictionary definitions." *Welch Foods, Inc v Attorney General*, 213 Mich App 459, 462-463; 540 NW2d 693 (1995). The term "demand" is defined as "an act of demanding or asking esp. with authority . . . something claimed as due." *Merriam-Webster's Collegiate Dictionary* (11th ed). In addition, the term "demand" is defined to mean the "assertion of a legal right" and an "imperative request preferred by one person to another, under a claim of right, requiring the

latter to do or yield something," or a request "for payment of debt or amount due." *Black's Law Dictionary* (6th ed).

The trial court did not expressly decide whether plaintiff filed a "demand" or a "claim" with the Treasurer. The trial court stated that, while the document filed by plaintiff "could be interpreted as [a] 'demand' [it] was not labeled as such. It is not known whether the St. Clair County Treasurer treated the 'Verified Claim' as a demand or a claim, or whether it made any such distinction." The trial court also suggested that the Treasurer may have treated the "demand" as a "claim" because plaintiff never used the word "demand" in its filing, but did use the word "claim" throughout that document.

The surplus statute provides that "the surplus shall be paid over by the officer or other person *on demand*, to the mortgagor, his legal representatives or assigns." MCL 600.3252 (emphasis added). The statute does not contain any specific requirements regarding the form of a "demand" or the information that must appear in a "demand." In fact, the statute does not even require that a "demand" be in writing.[3] On June 2, 2017, plaintiff filed a document with the Treasurer in which it alleged entitlement to the surplus from the mortgage foreclosure sale. Because plaintiff conveyed to the Treasurer its assertion of its right to disbursement of the surplus funds, and because the statute contains no specific requirements for the form or content of a "demand," we conclude that plaintiff filed a "demand" for purposes of MCL 600.3252.

While recognizing the usual and customary meanings of the terms "demand" and "claim," the trial court also noted that these terms appear in the statute "in a context that distinguished them, specifically by associating a 'demand' with the interests of a mortgagor seeking the surplus and a 'claim' with the interests of a subsequent mortgagee seeking the surplus." The trial court correctly understood the statute. Only "the mortgagor, his legal representatives or assigns" can present a "demand" for disbursement of surplus funds that remain after a mortgage foreclosure sale. In contrast, only a party with "a subsequent mortgage or lien encumbering the real estate, or some part thereof" can file a "claim" for disbursement of those surplus funds. MCL 600.3252.

Plaintiff correctly points out that it could not have filed a valid "claim" under the surplus statute. We agree that, because plaintiff never held a subsequent mortgage or lien encumbering the real estate, it could not have filed a valid "claim" under the statute. The fact that plaintiff's filing did not qualify as a valid "claim" did not, however, necessarily make that filing a "demand." It is possible for a junior mortgage holder to file a "claim" that is defective because it fails to satisfy the statutory requirements in some respect. If that junior mortgage holder was not also the legal representative or assignee of the mortgagor, an unlikely scenario, the junior mortgage holder could not file a "demand" for the surplus funds, but could only file a "claim" for the surplus funds. Therefore, any attempt by the junior mortgage holder to file a "claim" could

---

[3] In contrast, the statute does expressly require that a "claim" be filed in writing. The statute provides that "some claimant or claimants, shall file with the person so making the sale, a claim or claims, in writing, duly verified by the oath of the claimant, his agent, or attorney." MCL 600.3252.

fail, without that failed "claim" transforming into a "demand." Likewise, a party alleging that it is the mortgagor's assignee can file a "demand" for the surplus funds but cannot file a valid "claim" for those funds unless that party also holds a subsequent mortgage or lien encumbering the real estate. Contrary to the implication contained in plaintiff's argument, the fact that plaintiff's filing did not qualify as a valid "claim" did not necessarily mean that its filing qualified as a valid "demand." Nonetheless, because plaintiff conveyed to the Treasurer its assertion of its right to disbursement of the surplus funds, we conclude that plaintiff made a "demand" for purposes of MCL 600.3252.[4]

## C. OBLIGATION TO PAY A "DEMAND" IMMEDIATELY

Plaintiff next argues that, once it filed a "demand" for the surplus funds, the Treasurer should have immediately paid it the $77,490.54 surplus created by the foreclosure sale. We conclude that the trial court was correct in (1) recognizing that the statute required neither the Sheriff nor the Treasurer to pay plaintiff's "demand" within a specified period of time, and (2) holding that the Treasurer properly deferred the dispute between plaintiff and defendant to the trial court once defendant filed a "claim" for the surplus funds. Therefore, the trial court did not err in awarding the surplus funds to defendant under MCL 600.3252, even though plaintiff filed a "demand" for those funds before defendant filed a "claim" for those same funds.

Plaintiff argues that the statute requires that surplus funds shall be paid over "on demand," and that the phrase "on demand" means immediately, not within a reasonable period of time. Although plaintiff did file a "demand" under the statute, because its filing was not labeled as a "demand" and because its filing was easily mistaken for a "claim," we conclude that the trial court did not err in holding that the Treasurer had a reasonable period of time in which to process plaintiff's filing and the Treasurer acted properly in declining to pay plaintiff once it received defendant's competing "claim."

As an initial matter, the trial court stated that the reason why county officials did not make an immediate payment to plaintiff was unknown. The trial court stated, "What is known is that the Treasurer did not make an immediate payment of the surplus to Trustlink. It is not known why an immediate payment to Trustlink was not made, as it was the only party interested in the surplus funds at the time." Further, the trial court held that, although "nothing in the statute prevents the Treasurer/Sheriff from evaluating the merits of a demand or determining whether a demand is misfiled as a claim, MCL 600.3252 does not require it." The trial court also held that the statute does not specify a timeframe for the payment of surplus funds once a demand is made. Therefore, the trial court held that neither the Sheriff nor the Treasurer was

---

[4] Defendant argues that plaintiff did not make a proper "demand" under the statute because plaintiff filed its document with the Treasurer, rather than the Sheriff. Generally, an issue must be raised, addressed, and decided in the trial court to be preserved for review. *Dell v Citizens Ins Co of America*, 312 Mich App 734, 751 n 40; 880 NW2d 280 (2015). Defendant did not make this argument in the trial court and the trial court did not rule on this issue. Therefore, this issue is not properly preserved for appellate review and we need not decide it.

statutorily compelled to pay plaintiff the surplus funds during the seven days that passed between the filing of plaintiff's demand and the filing of defendant's claim.

Plaintiff argues that the phrase "on demand" is not synonymous with the phrase "a reasonable time." Plaintiff cites *Palmer v Palmer*, 36 Mich 487, 491 (1877) (holding that "a note payable on demand is payable at once"); and *Citizens' Savings Bank v Vaughan*, 115 Mich 156, 159 (1897) (holding that, "in suits upon a note between the promisor and the promisee . . . the universal rule is that the note is due at once"). We consider this case law inapplicable because these century-old decisions addressed contractual promises to pay a debt, a scenario that is not analogous to a public office holder's statutory obligation to pay a party claiming entitlement to funds created by the sale of another person's real property.

Plaintiff argues that the phrase "on demand" is also found in various statutes involving records and documents. See MCL 41.62 (requiring a township supervisor to deliver books, assessment rolls, and other papers on demand to his successor in office); MCL 449.20 (requiring business partners to render their partners or the legal representative of their deceased partners true and full information on demand); MCL 462.381 (requiring a railroad police officer to exhibit his metallic badge on demand and before making an arrest); and MCL 554.1021(1) (requiring that a receiver of real estate receive on demand possession of receivership property and payment of debts "matured or payable on demand"). Plaintiff argues that each of these statutory provisions contemplates immediate action, not action undertaken at the discretion of the actor in a reasonable time. Plaintiff further argues that the Legislature knows how to use the phrase "a reasonable time" when it intends to do so, citing MCL 600.557b(5) (providing that money deposited in a certain fund shall be refunded to the parties in a reasonable time); MCL 600.2911(2)(b) (providing a defendant in a libel action a reasonable time to publish a retraction); and MCL 600.8703(3) (holding that the time specified in an appearance citation for a municipal civil infraction "shall be within a reasonable time after the citation is issued"). Although we agree that the phrases "on demand" and "a reasonable time" are not synonymous, we conclude that the statutory authority cited by plaintiff is inapplicable because the statutes cited pertain to entirely different subject matters than the issue currently before this Court.

Regarding the speed with which a county official must respond to an assertion of the right to payment of surplus funds created after a mortgage foreclosure sale, we find instructive this Court's decision in the case of *In re $55,336.17 Surplus Funds*. In that case, the real property owners granted a first and second mortgage. After several bank mergers, PNC Bank held both mortgages. Both of the real property owners died and PNC foreclosed on the real property under the first mortgage. A third party purchased the real property at a sheriff's sale for an amount that satisfied the first mortgage and created a surplus of $55,336.17. *In re $55,336.17 Surplus Funds*, 319 Mich App at 504. A month after the sheriff's sale, PNC filed a verified "claim" for the surplus proceeds in the circuit court, as holder of the junior mortgage, and the surplus amounts were deposited with the circuit court. *Id*. at 504-505. The personal representative of the estate of one of the original property owners then filed a competing "claim" for the surplus proceeds in the circuit court. *Id*. at 505. The personal representative argued that PNC's junior lien on the property was extinguished upon foreclosure of the first mortgage, rendering PNC an ordinary creditor without a remaining security interest in the real property. The circuit court ordered the release of surplus proceeds to PNC, holding that the language of the

surplus statute indicated an intent to prioritize the claims of junior mortgagees over the interest of the original mortgagor. *Id*. at 506.

On appeal, this Court recognized that the foreclosure of a senior mortgage extinguishes the lien of a junior mortgagee where the junior mortgagee does not exercise its right to redeem. *Id*. at 509. This Court distinguished, however, between the potential existence of a security interest in the property as junior mortgagee and the right to claim a priority interest in the surplus funds, over the mortgagor, pursuant to the explicit language of the surplus statute. *Id*. at 510. This Court held that the surplus statute "was intended to apply for the protection of subsequent mortgage claimants or lienholders," granting them "a limited interest in foreclosure sale surplus proceeds superior to the mortgagor after a senior mortgage is satisfied." *Id*. at 510 (quotation marks and citation omitted). This Court concluded that there was "no question that PNC's interest in the surplus funds, as a junior mortgagee, was superior to appellant's, as the legal representative of the mortgagor." *Id*. at 514.

Furthermore, the *In re $55,336.17 Surplus Funds* Court addressed the speed with which a county official must respond to an assertion of the right to payment of surplus funds created after a mortgage foreclosure sale. As this Court stated:

> The plain language of MCL 600.3252 provides that the surplus should be paid to the mortgagor "unless at the time of the sale, or before the surplus shall be so paid over" a claim is filed by a subsequent mortgagee or lienholder. The Legislature therefore provided a period during which a subsequent mortgagee or lienholder may file a claim to foreclosure sale surplus proceeds, without regard to continuing security interests in the property itself or the statutory redemption period. [*Id*.]

In that case, because the junior lienholder filed its claim for the surplus funds "just over a month after the foreclosure sale," this Court held that the junior lienholder complied with the statutory requirements and that it was "therefore entitled under the statute to consideration as a claimant to the foreclosure sale surplus proceeds." *Id*. at 512.

Applying the holding of *In re $55,336.17 Surplus Funds* to the present case, we conclude that the trial court properly interpreted and applied the language of the surplus statute. The Sheriff (or the Treasurer acting as the Sheriff's agent) could have properly paid the surplus funds to plaintiff in response to its written "demand," during the seven-day period between the filing of that "demand" and the filing of defendant's first claim. Had the Sheriff or Treasurer done so, defendant would likely have had no recourse.[5] For whatever reason, neither the Sheriff nor the Treasurer in this case had yet disbursed the surplus funds to plaintiff when defendant filed its "claim" seven days later. Despite plaintiff's argument to the contrary, the trial court correctly held that the statute does not require either the Sheriff or the Treasurer to pay a demand for

---

[5] See *Schwartz v Irons*, 4 Mich App 628; 145 NW2d 357 (1966) (holding that a claimant has no ability to pursue the sheriff for surplus funds after the sheriff has paid those funds to another claimant).

surplus funds within any specified period of time. The surplus statute contains no express time requirement for filing a "claim" with the seller of foreclosed property and if a statute does not provide a specific time limit for the completion of a particular task, a reasonable time is implied. *Flint Cold Storage v Dep't of Treasury*, 285 Mich App 483, 497; 776 NW2d 387 (2009). The *In re $55,336.17 Surplus Funds* Court held that a "claim" for surplus funds was properly and timely filed "just over a month after the foreclosure sale." *Id.* at 512. In this case, we conclude that the seven-day period between the filing of plaintiff's "demand" and the filing of defendant's "claim" is a presumptively reasonable period of time, given the speed with which local units of government operate and this Court's prior ruling that one month is a reasonable period of time.

Although plaintiff makes a valid point that an obligation to make payment "on demand" generally requires immediacy, the specific facts of this case support the trial court's ruling that the Treasurer was justified in delaying payment for seven days while it conducted its due diligence in evaluating plaintiff's filing. Plaintiff provided the Treasurer with a document titled as a "Verified Claim" and only began to argue on appeal from the trial court's ruling that the document was in fact a "demand" and not a "claim." Plaintiff also included in the document many of the details statutorily required of a "claim," including (1) a writing; (2) duly verified by the oath of the claimant's attorney; (3) setting forth the amount of the underlying debt on the first mortgage, the amount of the successful bid, and the amount of the surplus; and (4) setting forth other facts and the nature of the claimant's alleged entitlement to the surplus funds. The Treasurer could have reasonably believed that the document was a "claim" that was not immediately payable "on demand" but was payable only after consideration of the claimant's statutory entitlement to the surplus funds. Therefore, we will not disturb the trial court's ruling that the Treasurer acted reasonably in examining plaintiff's written filing for seven days without issuing immediate payment to plaintiff.

## D. DEFENDANT'S FIRST CLAIM

Plaintiff next argues that defendant's first attempt at filing a claim was defective and that it did not qualify as a "claim" under MCL 600.3252. Plaintiff argues that, because defendant's first purported "claim" failed to state that the Bank had a subsequent mortgage or lien encumbering the Property, it was not a properly filed "claim" under the surplus statute. Plaintiff further argues that the trial court erred when it held that the surplus statute does not require a claimant to have an actual present ownership interest in the subsequent mortgage at the time the "claim" is filed with the person holding the surplus funds. We conclude that plaintiff's argument is without merit.

The trial court correctly recognized that defendant's "claim" to the surplus proceeds was properly before the trial court because the Bank finalized its assignment of the junior mortgage before the trial court proceedings occurred. In this case, it is undisputed that (1) the mortgagors granted a second mortgage on the Property, (2) that second mortgage was duly recorded, (3) plaintiff was on notice of the second mortgage when it filed its "demand" for the surplus funds as assignee of the mortgagors, and (4) the Bank received an assignment of the second mortgage before proceedings to determine entitlement to the funds began in the trial court. In *Schwartz v Irons*, 4 Mich App 628, 632; 145 NW2d 357 (1966), this Court stated that the surplus statute "was intended to apply for the protection of subsequent mortgage claimants or lien holders." In this case, it is undisputed that the Bank acquired a valid junior mortgage on the Property.

Therefore, it is appropriate to construe the statute in a manner that allows the holder of the junior mortgage to recover the surplus funds created by the foreclosure sale on the senior mortgage.

In the alternative, defendant argues that it was entitled to proceed in the trial court even if its first claim was defective because it was filed before the Bank obtained its assignment of the junior mortgage. Defendant notes that portion of the surplus statute that describes the proceedings in the circuit court. The statute provides:

> [I]n which case the person so making the sale, shall forthwith upon receiving the claim, pay the surplus to, and file the written claim with the clerk of the circuit court of the county in which the sale is so made; and thereupon any person or persons interested in the surplus, may apply to the court for an order to take proofs of the facts and circumstances contained in the claim or claims so filed. Thereafter, the court shall summon the claimant or claimants, party, or parties interested in the surplus, to appear before him at a time and place to be by him named, and attend the taking of the proof . . . and the court shall thereupon make an order in the premises directing the disposition of the surplus moneys or payment thereof in accordance with the rights of the claimant or claimants or persons interested. [MCL 600.3252.]

Defendant is correct that the statute allows both (1) parties who filed a "claim" with the person making the sale, and (2) any person or persons interested in the surplus, to apply to the circuit court for distribution of the surplus funds after a foreclosure sale. Although plaintiff filed a "demand" rather than a "claim" with the Treasurer, plaintiff indisputably filed a petition with the circuit court seeking an order resolving the parties' entitlement to the surplus funds. That filing allowed the circuit court to determine the rights of all "claimants or persons interested" in the surplus funds. MCL 600.3252. Even if defendant's first "claim" was invalid, plaintiff's filing of its petition in the trial court allowed the trial court to award defendant (on behalf of the Bank) the surplus funds, as a party "interested in the surplus." Therefore, plaintiff is not entitled to relief on this claim.

## E. VALIDITY OF THE TRIAL COURT PROCEEDINGS

Plaintiff next argues that, because neither the first nor the second purported "claim" filed by defendant constituted a valid "claim" under the surplus statute, the Sheriff could not "forthwith upon receiving the claim, pay the surplus to, and file the written claim" with the trial court, as required by the statute. Plaintiff further complains that the Sheriff never filed either of defendant's two purported "claims" with the trial court. Plaintiff argues that the trial court's involvement was never triggered under the statutory language because the Sheriff never paid the surplus to or filed defendant's claim with the trial court. Therefore, plaintiff argues that the entire procedure in this case was defective.

Yet, plaintiff indisputably applied to the trial court for payment of the surplus funds as an interested party to those funds. Because plaintiff chose to initiate the trial court proceedings when it filed its petition with the trial court, it will not now be heard to complain that the trial court should have refrained from determining the parties' respective interests. The dispute over entitlement to the surplus proceeds reached the correct forum—the circuit court. Plaintiff has

suffered no harm from the fact that it, rather than the Sheriff or Treasurer, filed the petition. Plaintiff has also failed to articulate how the result in this case would have been different if the Sheriff or the Treasurer, rather than plaintiff, had filed the case in the circuit court. Therefore, plaintiff is not entitled to relief on this issue.

## F. WAIVER AND FORFEITURE

Plaintiff makes three additional arguments: (1) defendant could not act as an agent for the Bank for purposes of filing a "claim" for disbursement of surplus funds under the surplus statute because defendant was only a mortgage servicer and servicers are only entitled to collect installment payments under a mortgage; (2) defendant's first and second "claims" were invalid because those documents were not signed by the claimant, his agent, or attorney; and (3) defendant's second "claim" was invalid because it failed to state the amount unpaid on the second mortgage.

With regard to plaintiff's argument that defendant could not act as an agent for the Bank in this case, we decline to reach this issue because plaintiff clearly waived this issue in the trial court. In its answer to defendant's petition for disbursement of the surplus foreclosure proceeds, plaintiff specifically stated that it did "not challenge the right of a mortgage servicer to act on behalf of a mortgage holder." Furthermore, at the motion hearing in the trial court, plaintiff specifically stated that defendant could assert a claim on behalf of the Bank in a representative capacity. These statements constitute a waiver of plaintiff's appellate argument that defendant had no authority as a servicer to act as the Bank's agent in the filing of a "claim" under the surplus statute. See *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000).

With regard to plaintiff's two additional arguments, we hold that these issues are not properly preserved for appellate review because plaintiff never made these arguments in the trial court and the trial court never ruled on these issues. Because appellate consideration of unpreserved claims of error is disfavored, *People v Frazier*, 478 Mich 231, 241; 733 NW2d 713 (2007), we decline to address the arguments that plaintiff raises for the first time on appeal.

Affirmed. Defendant may tax costs under MCR 7.219.


/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Brock A. Swartzle

-12-