*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MACOMB COUNTY PROSECUTOR,

        Plaintiff,

v

MACOMB COUNTY EXECUTIVE and COUNTY
OF MACOMB,

        Defendants.

FOR PUBLICATION
June 27, 2024
9:15 a.m.

No. 370065

Before: FEENEY, P.J., and CAVANAGH, and O'BRIEN, JJ.

PER CURIAM.

In this original action under MCL 141.438(7) of the Uniform Budgeting and Accounting Act (the UBAA), MCL 141.421 *et seq.*, plaintiff Macomb County Prosecutor Peter Lucido seeks an order directing defendant Macomb County Executive Mark Hackel to disburse specific funds appropriated by Board of Commissioners (the Commission) of defendant Macomb County. We grant relief in part and deny it in part.

## I. BACKGROUND

At issue is the parties' dispute over a total of $42,500.00 for the retention of five law firms to provide independent legal counsel to plaintiff. The parties disagree on whether the Commission had the authority to appropriate to plaintiff the funds under the charter.

In 2009, Macomb County voters adopted a home rule charter under the Charter Counties Act (CCA), MCL 45.501 *et seq.,* and created the office of the county executive. Under the charter, the executive, who is the head of the executive branch of county government, oversees all county departments, except for departments headed by countywide elected officials. The executive is responsible for submitting a proposed annual budget and quarterly financial reports to the Commission. The 13-member Commission, which holds the county's legislative power, has the authority to appropriate funds pursuant to section 4.4(c) of the charter. The charter requires that

plaintiff, as a countywide elected official,[1] manage his office within authorized budget appropriations.[2] The charter also provides that plaintiff is subject to the budgeting recommendations of the executive as approved by the Commission.

The charter mandates that the executive prepare and administer a balanced budget, which the executive transmits to the Commission before the beginning of the next fiscal year. The Commission adopts a balanced line item operating budget and a general appropriations ordinance.[3] Transfers and impoundments[4] of appropriations may be made only in accordance with the appropriations ordinance. The executive may veto a line item of an ordinance appropriating money, but the Commission can override that veto. If the executive does not veto within 10 business days, the action of the Commission takes effect.[5]

For the 2024 budget year, plaintiff sought approval for five outside legal firms for prelitigation civil matters. On November 27, 2023, the Commission enacted the general budget in Ordinance 2023-04, which authorized $42,500.00 as "contract services," i.e., payment for independent legal services.

On December 8, 2023, Hackel vetoed the Commission's $42,500.00 appropriation for independent legal services. He relied on § 6.6.5 of the charter, which provides in part that elected officials shall not spend money for legal counsel unless permitted under law. The section also permits the Commission to fund independent counsel to file an action to clarify or enforce the powers of the elected official's office. Hackel opined that, under § 6.6.5, the Commission may authorize independent legal counsel only where plaintiff seeks to clarify the duties of his office in an action for injunctive, mandamus, or declaratory relief. Hackel maintained that neither the charter nor Michigan law authorized plaintiff to retain outside general counsel at the County's expense. Hackel stated that plaintiff could request advice from Corporation Counsel.

Plaintiff asked the Commission to override Hackel's veto. On December 14, 2023, the Commission voted to override Hackel's veto in Resolution 2023-11699. The budget was restored as the Commission originally adopted, and included the $42,500.00 for the five legal contracts.

---

[1] The prosecutor is a countywide elected official under section 6.2 of the charter, and the office of the prosecutor also is constitutionally established. Const 1963, art 7, § 4.

[2] An "appropriation" is "an authorization granted by a legislative body to incur obligations and to expend public funds for a stated purpose." MCL 141.422a(3).

[3] The budget adopted by the legislative body is known as a "general appropriations act." MCL 141.422c(2).

[4] An impoundment occurs when an executive official declines to disburse funds that the legislative body has appropriated. *Macomb Co Prosecutor v Macomb Co Executive* ("*Macomb I*")*,* 341 Mich App 289, 298 n 2; 989 NW2d 864 (2022).

[5] The charter budget process is in line with the UBAA, which provides that the chief administrative officer prepares the budget and transmits it to the legislative body. The legislative body is to hold a public hearing before passage of a general appropriations act. MCL 141.434.

Plaintiff's deputy sent engagement agreements with the five law firms to the Commission for its approval. At its January 25, 2024 meeting, the Commission resolved to approve the outside legal services for plaintiff for the five firms. In Resolution 2024-11938, the Commission approved agreements with independent legal counsel. The funds for the contracts already had been appropriated in the appropriations ordinance.

Plaintiff then requested that Hackel sign the contracts for outside legal services, but Hackel took no action. In a January 29, 2024 memorandum to the Commission, Hackel reiterated that plaintiff could not cause the expenditure of money on outside legal services contracts unless permitted by law. Hackel encouraged the Commission to direct him to the law that it believed permitted that use of public funds.

The Commission responded by citing the history of disagreement between plaintiff and Corporation Counsel. Further, the Commission cited the charter, which authorizes the Commission to approve contracts, and to appropriate funds except where expressly prohibited. The Commission indicated that it decided that the circumstances permitted outside counsel.

Plaintiff brings this original action against defendants under MCL 141.438(7) of the UBAA, and argues that defendants' position regarding outside legal counsel violated this Court's 2022 opinion in *Macomb Co Prosecutor v Macomb Co Executive* ("*Macomb I*")*,* 341 Mich App 289; 989 NW2d 864 (2022). Plaintiff contends that he is entitled to mandamus and injunctive relief on the basis of defendants' alleged violations of statutes, ordinances, and the charter. Plaintiff maintains that defendants wrongfully impounded funds. Plaintiff's complaint also alleges that defendants failed to implement the budget for four part-time positions for his office. The parties since have stipulated to dismiss the parts of the complaint involving the four part-time positions.

Plaintiff has moved for summary disposition, stating that no genuine issue of material fact exists regarding his claim that Hackel should have implemented funding for outside legal counsel, and the County has moved to dismiss under MCR 2.116(C)(4) and (C)(8) for lack of jurisdiction and the failure to state a claim. Plaintiff also has moved for an order to show cause for Hackel to establish why he should not be held in contempt.[6]

## II. LEGAL STANDARDS

Whether this Court has subject-matter jurisdiction is a question of law. *In re Eddins*, 342 Mich App 529, 536; 995 NW2d 604 (2022). Issues of charter and statutory interpretation also are questions of law. *Barrow v Wayne Co Bd of Canvassers*, 341 Mich App 473, 484; 991 NW2d 610 (2022). Decisions regarding declaratory and injunctive relief are discretionary. See *Martin v Murray*, 309 Mich App 37, 45; 867 NW2d 444 (2015).

---

[6] We granted immediate consideration, imposed an expedited briefing schedule, and ordered that "[p]ursuant to MCR 7.206(D)(4), this matter will be submitted for decision on the briefs filed without oral argument." *Macomb Co Prosecutor v Macomb Co Executive*, unpublished order of the Court of Appeals, entered May 15, 2024 (Docket No. 370065).

The County moves for summary disposition under MCR 2.116(C)(4) and MCR 2.116(C)(8). Summary disposition is proper pursuant to MCR 2.116(C)(4) when, after considering the pleadings, depositions, admissions, and other documentary evidence, the court determines that it lacks jurisdiction over the subject matter of the case. MCR 2.116(C)(4); *Cary Investments, LLC v City of Mount Pleasant*, 342 Mich App 304, 312; 994 NW2d 802 (2022). Summary disposition is warranted under MCR 2.116(C)(8) if a plaintiff has "failed to state a claim upon which relief can be granted." A motion pursuant to (C)(8) "tests the legal sufficiency of the complaint on the basis of the pleadings alone." *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (citation omitted).

Plaintiff moves for summary disposition under MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) "'tests the factual sufficiency of a claim.' " *Yopek v Brighton Airport Ass'n, Inc*, 343 Mich App 415, 422; 997 NW2d 481 (2022) (citation omitted). Courts consider the evidence in a light most favorable to the opposing party, and may grant a motion only where no genuine issues of material fact exist. *Deschane v Klug*, 344 Mich App 744, 750; 2 NW3d 131 (2022). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Patel v FisherBroyles, LLP*, 344 Mich App 264, 271; 1 NW3d 308 (2022) (citation and quotation marks omitted).

Hackel seeks relief under MCR 2.116(I)(2). "[S]ummary disposition is proper under MCR 2.116(I)(2) if the court determines that the opposing party, rather than the moving party, is entitled to judgment as a matter of law." *Blackwell v Livonia*, 339 Mich App 495, 501; 984 NW2d 780 (2021).

## III. DISCUSSION

This lawsuit represents the most recent installment of litigation between these parties, who have sparred over past budgetary matters. Here, plaintiff asserts that Hackel is infringing upon his discretion to spend monies appropriated to his office, while Hackel rejoins that plaintiff has no legal basis for his request for the funds. This Court's decision ultimately rests on the language of the charter, but we first will address our jurisdiction to hear this matter.

## A. JURISDICTION

Under MCR 7.203(C)(5), we may entertain an original action required by law to be filed in this Court. The UBAA expressly provides that an elected county official who heads a branch of county government[7] may bring suit against the county executive regarding general appropriations. MCL 141.438(6). Indeed, suits regarding county disputes over general appropriations must be brought in this Court. MCL 141.438(7). Further, this Court's jurisdiction

---

[7] We previously have ruled that plaintiff is an elected county official who heads a branch of county government. *Macomb I*, 341 Mich App at 301-304.

over a suit brought under subsection (6) is "exclusive and . . . shall not be transferred to any other court." MCL 141.438(10).

Defendants and the Commission[8] challenge whether subject-matter jurisdiction is proper in this Court. Subject-matter jurisdiction "is the right of the court to exercise judicial power over a class of cases, not the particular case before it; to exercise the abstract power to try a case of the kind or character of the one pending." *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 528; 695 NW2d 508 (2004) (quotation marks and citation omitted). Where this Court indisputably has jurisdiction over cases involving the enforcement of a county official's funding under a county's budget, defendants' contention that this Court lacks subject-matter jurisdiction must fail.

Notwithstanding, defendants and the Commission argue that, once the parties stipulated to dismiss the four part-time positions issue, this Court lost jurisdiction because the remaining issue involves intra-county contracting and contract execution authority. They cite *Bay Co Clerk v Bay Co Executive,* unpublished per curiam opinion of the Court of Appeals, issued November 3, 2016 (Docket No. 331455), where this Court recognized a boundary to its jurisdiction under the UBAA:

> To the extent that this involves a line item in the budget, this issue is properly before the Court as part of plaintiff's claims regarding a serviceable level of funding. To the extent that the issue concerns control over the concealed pistol licensing fund, it does not state a claim that is within the Court's jurisdiction under MCL 141.438(9). [*Id*., at 3.]

In *Bay Co Clerk,* the plaintiff challenged the county clerk's office serviceable level of funding.[9] The plaintiff also sought a declaration that all fees received by the county clerk from concealed pistol licensing be under the clerk's control and expended at her direction. *Bay Co Clerk,* unpub op at 1-2. This Court decided that it had jurisdiction under the UBAA as it related to the question of a serviceable level of funding. The portion of the claim involving control over the concealed pistol licensing fund, however, was outside this Court's original jurisdiction over serviceable funding levels. *Id.* at 3.

Here, "contract services" was a line item in the budget. Plaintiff seeks the enforcement of that line item in the general appropriations act. That claim is properly before us. We are unpersuaded by the Commission's argument that its January 25, 2024 action, Resolution 2024-11938, was not an appropriations action subject to enforcement. As the Commission itself noted, that resolution was dependent on funds in the general appropriations ordinance that plaintiff now

---

[8] We have granted the Commission's motion to appear as amicus curiae. *Macomb County Prosecutor v Macomb County Executive*, unpublished order of the Court of Appeals, entered June 17, 2024 (Docket No. 370065).

[9] The serviceable level of funding challenge in *Bay Co Clerk* arose from another section of the UBAA, MCL 141.436(9).

seeks to enforce. Accordingly, this Court has jurisdiction of the instant dispute to the extent that it involves enforcement of the appropriation in the general appropriations ordinance.

Defendants argue, however, that MCL 141.438(9) gives this Court jurisdiction only insofar as plaintiff's claims fall within the UBAA and, where the claims involve the power to initiate contracts, those claims should be dismissed. But plaintiff is simply seeking the appropriation granted by the Commission; he is not asking for a determination about contract authority. It is undisputed that the Commission authorized funds for independent legal counsel, and plaintiff seeks to use those funds. The fact that a contract is the item being funded does not distinguish this case from a budget dispute over a noncontract item. Plaintiff's claims are related to specific funding for his office under the County's budget.

To the extent that the parties dispute the applicable procedure to implement a contract under the county's practices, and whether the Commission has the authority to initiate contracts, those points are outside this Court's narrow jurisdiction in the instant original action. Once this matter concludes, the parties are free to file a separate action regarding the county contractual procedures. Stated differently, should a conflict arise over contract procedures concerning the appropriation, that conflict must be resolved in a suit separate from the enforcement of the general appropriations matter before this Court.

Consequently, we reject the argument that this case does not involve enforcement of a general appropriation. Defendants thus have not shown that this Court lacks subject-matter jurisdiction, and we deny their motion for summary disposition pursuant to MCR 2.116(C)(4).

B. FAILURE TO STATE A CLAIM

The County seeks dismissal of this suit on the basis that it fails to state a claim against the County, it is untimely, and plaintiff lacks the legal capacity to sue. We disagree.

The County argues that it is entitled to summary disposition pursuant to MCR 2.116(C)(8) because plaintiff's complaint fails to state a claim against it. Section 6.6.5 of the charter indicates, in relevant part, that "any action against the County shall name the County as a party." Under that provision, which is at the heart of the parties' dispute, plaintiff was obliged to name the County. Where § 6.6.5 requires that the County be named if the suit is against it, the County should not complain that plaintiff named it as a party.

Defendants also argue that plaintiff's suit is time-barred under MCL 141.438(7), which provides in relevant part that the suit must be brought within 60 days of either: "(a) The adoption of a general appropriations act" or "(b) An amendment to a general appropriations act or an action relating to the enforcement of that general appropriations act, if the amendment or action constitutes a basis for the suit." Subsection (a) does not apply here because the Commission's adoption of the general appropriations act occurred on November 27, 2023, and plaintiff did not file the instant action within 60 days, or on or before January 26, 2024.

The parties dispute whether plaintiff's lawsuit is timely under subsection (b). Plaintiff contends that the act constituting a basis for the suit occurred after January 25, 2024, when the Commission adopted a resolution approving the five legal services contracts, but Hackel took no action to implement the contracts. Plaintiff filed the instant suit within 60 days of January 25,

-6-

2024 and that also was within 60 days of Hackel's January 29, 2024 memorandum indicating that elected officials could not spend public monies for legal services unless permitted by law and that he had not found a law permitting plaintiff to hire independent legal counsel.

Defendants counter that the January 2024 memorandum is irrelevant where Hackel was merely reiterating his veto of December 2023; thus, the December date controls. Defendants cite *Frank v Linkner,* 500 Mich 133; 894 NW2d 574 (2017), where the Court ruled that the date of the "wrong" under the statute regarding general claim accrual, MCL 600.5827, was "the date on which the defendant's breach harmed the plaintiff, as opposed to the date on which defendant breached his duty." *Id.* at 150 (citation omitted). The Court concluded that the relevant date was when the plaintiff first incurred the harm asserted. *Id.*

Relying on *Frank*, defendants contend that the 60-day period began to run on December 8, 2023, the date Hackel vetoed the Commission's approval of the five contracts. The Legislature did not use the term "first action" in MCL 141.438(7), but merely referred to the general "an action" in referring to the 60-day period for bringing suit. Even assuming for the sake of argument that the 60-day period begins when plaintiff "first" incurred the harm, plaintiff was not harmed on December 8, 2023, given that the Commission voted to override Hackel's veto six days later, on December 14, 2023. Further, defendants' 60-day calculation does not include the Commission's January 25, 2024 approval of the contracts, and Hackel's failure to sign those contracts. In light of those additional circumstances, we cannot agree with defendants that Hackel's January 29, 2024 refusal was the same harm as the December 8, 2023 harm. Under *Frank*, "[a]dditional damages resulting from the same harm do not reset the accrual date . . . ." *Id*. at 155. Hackel's later refusal was a new harm, where it occurred after the Commission's veto override.

As evidence that plaintiff knew the claim had accrued in December, defendants point to an e-mail from plaintiff's deputy, who referenced Hackel's veto and noted in part that plaintiff was asking the Commission to amend the budget "[i]n lieu of filing a lawsuit to enforce the budget." The fact that plaintiff *could* have filed his lawsuit when Hackel vetoed his request for the legal contracts does not mean that plaintiff *must* have filed then. While plaintiff was aggrieved by Hackel's December veto, plaintiff retained the possibility of a Commission override, in which event plaintiff would not have been aggrieved—had Hackel implemented the contracts. Hackel's refusal to sign the contracts operated as his admission that he would impound funds even after the Commission overrode his veto. Plaintiff therefore reasonably waited to file suit until after Hackel's refusal to disburse funds in January that had been reinstated by the Commission's override of Hackel's December veto.

Defendants also argue that plaintiff does not have the legal capacity to initiate the instant suit. The court rules permit summary disposition when "[t]he party asserting the claim lacks the legal capacity to sue." MCR 2.116(C)(5). The capacity to sue concerns whether a legal barrier, such as mental incompetency, exists such that the party does not have the legal ability to initiate

an action. *Moorhouse v Ambassador Ins Co, Inc*, 147 Mich App 412, 419 n 1, 383 NW2d 219 (1985).[10]

Defendants assert that plaintiff does not have the legal capacity for this suit because plaintiff may not expend public funds for legal counsel unless permitted by law. This circular argument is linked to the interpretation of the charter rather than to plaintiff's capacity to bring suit, and we reject it.

Defendants next point out that plaintiff is without funds to bring this particular suit given the Commission's withdrawal of approval for the expenditure. Even if plaintiff has no authorization to use public funds to support this lawsuit, the *lack of funds* to pay legal fees does not mean that plaintiff *lacks the capacity* to bring suit. The question of who will be responsible for legal fees does not equate with, for example, the bringing of suit in the name of a dissolved corporation, see *Flint Cold Storage v Dep't of Treasury,* 285 Mich App 483; 776 NW2d 387 (2009), or a suit by an infant or a plaintiff with mental incompetency, see *Moorhouse*, 147 Mich App at 419.

Consequently, defendants have not persuasively argued that this action should be dismissed because it fails to state a claim against the county, it is untimely, or plaintiff lacks the legal capacity to sue. The motion to dismiss therefore is denied.

## C. COLLATERAL ESTOPPEL

Plaintiff argues that collateral estoppel principles bar defendants' position, where, in *Macomb I*, this Court previously decided that he has the exclusive discretion to spend funds appropriated to his office by the Commission. While *Macomb I* is helpful here, it does not operate to collaterally estop defendants.

Collateral estoppel requires three elements: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *2 Crooked Creek LLC v Cass Co Treasurer*, 507 Mich 1, 22 n 47; 967 NW2d 577 (2021) (citation, quotation marks, and brackets omitted).

Plaintiff states that this Court determined in *Macomb I* that he has the "exclusive discretion" to expend funds appropriated by the Commission. The phrase "exclusive discretion" appears just once in *Macomb I*, as part of plaintiff's request for a declaratory judgment. *Macomb I*, 341 Mich App at 315. But this Court decided in *Macomb I* that Hackel has limited authority to impound appropriated funds. *Id.* at 318. Therefore, this Court's holding in *Macomb I* is more nuanced than plaintiff acknowledges.

---

[10] The doctrine of standing is distinct from the capacity to sue, although the concepts are frequently conflated. See *Flint Cold Storage v Dep't of Treasury*, 285 Mich App 483, 502; 776 NW2d 387 (2009). Here, the UBAA provides plaintiff with standing to bring the instant suit. See *Macomb I*, 341 Mich App at 303-305.

Additionally, the issue in *Macomb I* involved whether the Commission had authority to adopt a budget that differed from the one recommended by Hackel. Here, the question is whether Hackel may decline to implement the budget and contracts for outside legal services where the Commission has appropriated the money for that purpose. That question was not necessarily litigated and determined in *Macomb I*, i.e., this Court has not previously decided whether Hackel must disburse money where he disputes whether it was lawfully appropriated. Collateral estoppel does not apply here.

## D. THE CHARTER LANGUAGE

The gravamen of the dispute is whether the charter provisions authorize plaintiff to obtain public funds for independent legal representation. Plaintiff avers the charter does so, while defendants assert that the charter does not. The charter language supports plaintiff's position.

This Court repeated the principles regarding charter interpretation in *Hackel v Macomb Co Comm'n*, 298 Mich App 311, 826 NW2d 753 (2012):

> County charter provisions are subject to the same rules of interpretation as are statutes. *Wayne Co* [*v Wayne Co Retirement Comm'n*], 267 Mich App [230,] 244[; 704 NW2d 117 (2005)]. When the language of a charter provision is unambiguous, it controls. *Id*. at 243, 704 NW2d 117. The framers of the charter and the people who voted to adopt it, "must be presumed to have intended that the provision be construed as it reads." *Woods v Bd of Trustees of the Policemen & Firemen Retirement Sys of Detroit*, 108 Mich App 38, 43; 310 NW2d 39 (1981). [*Hackel*, 298 Mich App at 318.]

This Court has explained the rules of statutory construction as follows:

> This Court's goal with respect to statutory interpretation is to determine and give effect to the intent of the Legislature. *Bonner v Brighton*, 495 Mich 209, 222; 848 NW2d 380 (2014). "When the words used in a statute or an ordinance are clear and unambiguous, they express the intent of the legislative body and must be enforced as written." *Sau-Tuk Indus, Inc v Allegan Co*, 316 Mich App 122, 137; 892 NW2d 33 (2016). This Court "must assign every word or phrase its plain and ordinary meaning unless the Legislature has provided specific definitions or has used technical terms that have acquired a peculiar and appropriate meaning in the law." *Mayor of Cadillac v Blackburn*, 306 Mich App 512, 516; 857 NW2d 529 (2014). [*Warren City Council v Fouts*, 345 Mich App 105, 117; 4 NW3d 79, 85– 86 (2022).]

Central to our analysis is the charter language, specifically § 6.6.5, which addresses legal counsel on behalf of countywide election officials as follows:

> The Countywide Elected Officials provided for in this Article shall not cause the expenditure of taxpayer funds or public monies for legal counsel unless permitted by law, but may seek advice and counsel from Corporation Counsel upon request. If a Countywide Elected Official provided for in this Article desires to protect or seek authority to implement the rights, powers, and duties of the office,

the Executive may authorize the use of Corporation Counsel, or the Commission may authorize the use of independent legal counsel, to seek injunctive, mandamus, or declaratory relief from a court of competent jurisdiction to clarify or enforce the rights, powers, and duties of the office. Individual departments shall not file suit against each other, and any action against the County shall name the County as a party. All actions relating to the rights, powers, or duties of a Countywide Elected Official provided for in this Article shall be solely for injunctive, mandamus, or declaratory relief against the County. [PX Y, Charter, § 6.6.5, Appx 181.]

Under both the first and second sentences, Corporation Counsel clearly is available to offer general legal advice to plaintiff. Indeed, the parties concede that Corporation Counsel represented plaintiff in several suits, or retained special outside counsel for plaintiff. However, the relationship between plaintiff and Corporation Counsel appears strained, and plaintiff is concerned about conflict in light of Corporation Counsel's representation of the County in the instant case. Put simply, plaintiff does not wish to use Corporation Counsel exclusively; he wishes to retain his own independent legal counsel. Section 6.6.5 states that Corporation Counsel "may" be used by elected officials for some purposes, and the term "may" signals discretionary, rather than mandatory, action. See *Jackson v Bulk AG Innovations, LLC*, 342 Mich App 19, 27; 993 NW2d 11 (2022). That language does not obligate plaintiff to rely on Corporation Counsel in all instances.

Plaintiff argues that the first sentence of § 6.6.5 enables him to hire independent legal counsel. That sentence provides in part that that an elected official "shall not" expend public money on legal services. The term "shall" is mandatory. *Fradco, Inc v Dep't of Treasury*, 495 Mich 104, 114; 845 NW2d 81 (2014). That limited prohibition, however, is not a blanket prohibition, as plaintiff may hire independent counsel if "permitted by law." Here, the Commission authorized the funds as it believed the circumstances warranted. The Commission, the local legislative body of the municipal unit, enacted Resolution 2024-11938 authorizing plaintiff to use independent legal counsel. Section 4.4 of the charter gives the Commission the power to appropriate funds as provided by the charter and law, as well as approve contracts of the County. Also, under § 4.4(j) of the charter, the Commission may "[e]xercise any power granted by law to charter or general law counties unless otherwise provided" in the charter.

Defendants suggest that Resolution 2024-11938 runs afoul of the condition in § 6.6.5 that the Commission may authorize independent legal counsel only under certain circumstances—to seek injunctive, mandamus, or declaratory relief to clarify or enforce the rights, powers, and duties of the office. Although § 6.6.5 lists some circumstances where independent counsel can be used, nothing in § 6.6.5 prohibits the Commission from authorizing the use of independent legal counsel under other circumstances. Consequently, we conclude that the Commission was free to appropriate the funds to plaintiff.

As an example of a law permitting the use of independent legal counsel, the parties discuss MCL 49.73, which requires the provision of independent legal counsel to a county prosecutor under specific conditions:

> The board of commissioners of a county shall employ an attorney to represent elected county officers, including the . . . prosecuting attorney . . . in civil matters, as a defendant, when neither the prosecuting attorney or county corporation

counsel is able to represent the particular officer.  Legal advice, counsel, or court action shall be required under this section only in a case which involves an official act or duty of the office of the county officer.  The attorney shall receive reasonable compensation as shall be determined by the board of commissioners. . . . [MCL 49.73.]

This statute applies when an officer is named "as a defendant."  Here, however, plaintiff wishes to retain counsel for general legal advice, and not necessarily in cases where he is named as a defendant, and MCL 49.73 does not mandate the use of independent legal counsel for general legal advice.  Nevertheless, the statute's directive regarding the provision of legal counsel under specific circumstances does not mean that the Commission is prohibited from authorizing independent legal counsel under other circumstances.  Likewise, MCL 691.1408(3) of the Governmental Immunity Act, MCL 691.1401, *et seq*., does not directly apply here as it involves legal action arising from conduct during employment with a governmental agency, but it offers another example to support the conclusion that plaintiff may consult independent counsel.

We next turn to the second sentence of § 6.6.5, which indicates in part that "the Commission may authorize the use of independent legal counsel, to seek injunctive, mandamus, or declaratory relief from a court of competent jurisdiction to clarify or enforce the rights, powers, and duties of [plaintiff's] office."  In its analysis, the Commission essentially splits that sentence into two parts, and posits that it means that, when the Commission so authorizes, independent legal counsel is available to assist plaintiff to implement the rights, powers, and duties of the official's office.  According to the Commission, the limitation of injunctive, mandamus, or declaratory relief becomes applicable only if counsel files a lawsuit on plaintiff's behalf.  We do not interpret that sentence in that manner where there is no comma before the clause "to clarify."  Further, plaintiff does not desire independent legal advice regarding the duties of his office; rather, he wants legal counsel for matters including tort liability, employment law, freedom of speech, rules of professional conduct, and other civil matters.  Nevertheless, we interpret "the rights, powers, and duties" to include the matters about which plaintiff here seeks legal counsel, as they are related to his duties as the elected prosecutor, and to the powers of his office.

Defendants make much of the fact that, after Hackel's veto, plaintiff and the Commission initiated contracts for the five law firms even though neither plaintiff, nor the Commission, has authority to initiate a contract.  This argument does not implicate the underlying appropriations issue.  Plaintiff is not asking this Court to enforce the *contracts* approved by the Commission in Resolution 2024-11938; rather, plaintiff requests that this Court enforce the *general appropriations act* and direct Hackel to disburse the impounded funds.  To the extent that plaintiff and the Commission argue that the Commission has authority to initiate contracts, that issue is not before us.  As we noted earlier, the parties may debate their varying interpretations of the county contract process by filing a separate action in circuit court, such as the one Hackel filed in 2012

seeking a declaration regarding the power to approve Macomb County contracts. *Hackel*, 298 Mich App 311.[11]

Plaintiff also argues that Hackel is equitably estopped from raising any contract-procedure challenges.[12] We disagree. Plaintiff submitted the contracts and supporting documents to Hackel for approval, but Hackel did not approve the contracts. Only after it became apparent that Hackel would not act on the contracts, did plaintiff submit them to the Commission. Importantly, Hackel did not decline to sign the contracts because of the process plaintiff employed, but instead declined because he believed the contracts were unlawful at the point of inception as the charter did not permit the appropriation. We are persuaded by plaintiff's argument that principles of equitable estoppel preclude Hackel from arguing that the correct procedure was not followed.

We reject Hackel's supposition that our acceptance of plaintiff's position would have dramatic ramifications in that an elected county official who heads a branch of county government could raise anything relating to the contracting process in a budget-enforcement action. Hackel suggests that he could be subject to legal action every time he opts not to submit for approval, or sign, a specific contract. He states that the 60-day limitations period could be restarted by the submission of a new contract for signature. Those arguments fail in light of the fact that any such action would have to arise, as here, as a result of the Commission's specific appropriation for a specific purpose, and would be subject to the UBAA's terms.

We conclude that, although § 6.6.5 indicates that an elected county official cannot expend funds on independent counsel, it has an exception if such an expenditure is permitted by law. The Commission appropriated the funds, then issued a resolution that specifically authorized their use for independent legal counsel, and defendants have not cited anything in the charter proscribing that authority or process.

We thus consider whether a genuine issue of material fact exists that Hackel wrongfully interfered with plaintiff's exclusive discretion to expend funds appropriated for the prosecutor's office. *Macomb I* is instructive, where it held that the charter generally prohibits Hackel from impounding appropriated funds. *Macomb I*, 341 Mich App at 313. This Court recognized that an exception exists where doing so would achieve economic efficiencies. *Id.* In this matter, Hackel's focus was not economic efficiency, although he did encourage plaintiff to make use of Corporation Counsel. Rather, he argued that the Commission did not have the authority under the charter to appropriate funds for independent counsel. As we have noted, the Commission did have that authority. Further, *Macomb I* provided that Hackel could not "frustrate the 'stated purpose' of the

---

[11] We note that this Court ruled in that case that the Commission has the authority to approve, without limitation, contracts of the County. *Id.* at 319.

[12] Equitable estoppel "arises where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts." *Van v Zahorik*, 460 Mich 320, 335; 597 NW2d 15 (1999) (citation omitted). The theory underlying equitable estoppel is that loss must be borne by the one whose erroneous conduct caused the injury. *American Trust Co v Bergstein*, 246 Mich 527, 530; 224 NW 327 (1929).

appropriation." *Id.* Here, it is undisputed that the purpose of the appropriation is plaintiff's retention of independent counsel, so Hackel was without authority to frustrate that purpose. Where the charter permits the Commission to appropriate funds for plaintiff to use independent legal counsel, Hackel should not have impounded the funds absent a showing of economic efficiencies.

## E. APPLICATION

In light of the above conclusions, we resolve the complaint as follows. In Count I, plaintiff argues that defendants violated this Court's March 2022 opinion in *Macomb I*, as well as the 2012 opinion in *Hackel v Macomb Co Comm'n*. The former opinion resolved the issue whether the Commission may appropriate funds in excess of those recommended by Hackel, a point that is not at issue here. The latter opinion addressed whether the Commission has the authority to approve contracts, not whether a particular contract is permitted under law or the charter. Hackel did not violate either of the above legal opinions, so relief is denied on this issue.

Count II relates to the four part-time positions. As it been dismissed by stipulation of the parties, we do not address it.

In Count III, plaintiff seeks mandamus relating to the five outside legal contracts. Mandamus is an extraordinary remedy. *O'Connell v Dir of Elections,* 316 Mich App 91, 100; 891 NW2d 240 (2016). Whether a writ issues is within the discretion of the court. *Moore v Genesee Co*, 337 Mich App 723, 731; 976 NW2d 921 (2021). Specifically, the plaintiff has the burden to show:

> (1) a clear legal right to the act sought to be compelled; (2) a clear legal duty by the defendant to perform the act; (3) that the act is ministerial, leaving nothing to the judgment or discretion of the defendant; and (4) that no other adequate remedy exists. [*Twp of Casco v Secretary of State*, 472 Mich 566, 621; 701 NW2d 102 (2005), YOUNG, J., concurring in part.]

Defendants argue that the actions at issue are discretionary, not ministerial, and therefore mandamus may not lie. However, our Supreme Court has discussed the utility of mandamus in the context of a municipal executive official impounding appropriated funds. In his separate opinion in *Detroit Fire Fighters Ass'n v Detroit,* 449 Mich 629, 661; 537 NW2d 436 (1995), JUSTICE CAVANAGH recognized the time constraints involved with a fiscal budget year in a case involving the Mayor of Detroit's impounding appropriated funds. In that case, the budget year had long passed, therefore thwarting a remedy related to funds appropriated for that particular year. JUSTICE CAVANAGH opined:

> [I]n future cases, a trial court, faced with this issue during the fiscal year, should have the authority to issue a writ of mandamus to the mayor to do one of two things: implement the program or seek a formal amendment of the budget through joint action with the council. If the council believes that continued implementation of the program would be unwise, it, along with the mayor, can freely amend the appropriation. If, on the other hand, the council continues to support the appropriated program, the mayor has no authority to thwart the council's stated

purpose of the appropriation. [*Id.* at 661 (CAVANAGH, J., concurring in part and dissenting in part).]

We are persuaded by JUSTICE CAVANAGH'S opinion, such that mandamus is appropriate here. We direct Hackel to disburse the $42,500.00 appropriation, and the parties should work together to facilitate legal contracts under the applicable county process.

In Count IV, plaintiff seeks injunctive relief, and in Count V, plaintiff alleges violations of MCL 141.438(5), the appropriations act, and the charter. In light of our resolution regarding mandamus, these claims are moot.

## F. CONTEMPT

Finally, plaintiff asks this Court to hold Hackel in contempt for interfering with plaintiff's discretion to spend funds appropriated by the Commission. Contempt may arise as a result of the neglect or violation of a duty to obey a court order. *In re Contempt of United Stationers Supply Co*, 239 Mich App 496, 501; 608 NW2d 105 (2000). The issuance of an order of contempt is discretionary. See *Ferranti v Electrical Resources Co*, 330 Mich App 439, 443; 948 NW2d 596 (2019).

Plaintiff relies in part on § 11 of the general appropriations ordinance and the statute involving neglect of duty or misconduct, MCL 600.1701(g). In addition to statutory authority, courts have inherent independent authority to punish a person for contempt. *In re Contempt of Dougherty*, 429 Mich 81, 91-92; 413 NW2d 392 (1987). Three kinds of sanctions may redress a contemnor's behavior: (1) civil coercion, to force compliance with an order; (2) criminal punishment to vindicate the court's authority; and (3) civil compensatory relief for the complainant. *Id.* at 98. Further, MCR 3.606(A) provides that, upon a sufficiently supported motion for contempt committed outside the presence of the court, a court may issue an order to show cause why a person should not be punished for the alleged misconduct. The contempt power is designed to uphold the power of the courts, and maintain the effectiveness of their rulings. *Cassidy v Cassidy*, 318 Mich App 463, 504; 899 NW2d 65 (2017) (citation omitted).

Here, plaintiff seeks reimbursement of his attorney fees. Civil contempt may be relevant to reimburse a complainant who incurred costs because of the contempt. *In re Contempt of Pavlos-Hackney*, 343 Mich App 642, 670; 997 NW2d 511 (2022). The party asserting the contempt has the burden to show a violation of the order by a preponderance. *Porter v Porter,* 285 Mich App 450, 457; 776 NW2d 377 (2009).

We decline plaintiff's invitation to find Hackel in contempt. Plaintiff argues that Hackel violated this Court's opinion in *Macomb I* by withholding the funds for independent legal counsel. Notwithstanding, defendants are not collaterally estopped by *Macomb I*, and it follows that Hackel should not be sanctioned for contempt. Further, we are not convinced that Hackel's actions were ultra vires, as characterized by plaintiff. Accordingly, Hackel should have immunity for his actions as a high-ranking official of the County while he was acting in the scope of his executive authority. See *Petipren v Jaskowski*, 494 Mich 190, 204-212; 833 NW2d 247 (2013) (holding that the highest appointive executive official is entitled to immunity under MCL 691.1407(5), including when

performing acts within the authority vested in the official). On the basis of the above, plaintiff has not demonstrated that he is entitled to damages as a result of Hackel's actions.

## IV.  CONCLUSION

We conclude that this Court has original jurisdiction under MCL 141.438(7), that plaintiff has the capacity to file suit, and that the suit was timely filed.  Plaintiff did not fail to state a claim against the County in light of the charter language, and collateral estoppel does not bar the instant action.  We therefore deny the County's motion to dismiss.

We decide that the charter authorizes the Commission to appropriate funds so plaintiff may hire independent legal counsel.  Consequently, under MCR 7.206(F)(3), we grant in part plaintiff's motion for summary disposition as to Count III.  In all other respects, the complaint is denied.  We also deny plaintiff's motion for show cause regarding civil contempt.

We issue a writ of mandamus directing Hackel to disburse the funds to plaintiff and directing that the parties work together to facilitate the appropriate contracts.  This resolves the last pending claim and closes the case.


/s/ Kathleen A. Feeney
/s/ Mark J. Cavanagh
/s/ Colleen A. O'Brien

-15-